Terry Dean DODSON *v.* Melvin Gale DONALDSON
and Debra Kay DONALDSON

CA 82-476                                    661 S.W.2d 425

Court of Appeals of Arkansas
En Banc
Opinion delivered November 30, 1983

*Jerry D. Pruitt,* for appellant.

*Wiggins, Christian & Garner,* by: *Gary F. Wence,* for appellees.

DONALD L. CORBIN, Judge. The sole issue presented by this appeal is whether or not appellant, Terry Dean Dodson, had justifiable cause not to pay child support or communicate with his minor child for a period of one year. The trial judge found no justifiable cause existed and ruled that appellant's consent to the adoption was not required pursuant to Ark. Stat. Ann. § 56-207 (a) (1) and (2) (Supp. 1983), which provides:

> (a) Consent to adoption is not required of:
> (1) a parent who has deserted a child without affording means of identification, or who has abandoned a child;
> (2) a parent of a child in the custody of another, if the parent for a period of at least one [1] year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree;

We find no error and affirm.

Appellant Terry Dodson and appellee Debra Kay Donaldson were married and are the natural parents of a daughter born on January 19, 1979. By an Oklahoma decree of divorce entered on October 26, 1979, appellee Debra Kay Donaldson was awarded custody of the minor child and appellee was ordered to make support payments in the amount of $35.00 per week through the office of the clerk of that court and was awarded visitation rights. Stipulated exhibit number 1 made part of the record of the proceedings below reveals that appellant's support payments were paid to the clerk and forwarded to the parents of appellee who resided in Alma, Arkansas. Appellee remarried in June, 1980, and shortly thereafter both she, her daughter and appellee Melvin Gale Donaldson moved to Kansas City, Kansas. They resided there until April, 1981, when another move was made to Mountainburg, Arkansas. They subsequently moved to Fort Smith in February, 1982. Appellees filed a petition for adoption in the probate court of Sebastian County in May, 1982, to which appellant answered objecting to the adotion of his minor child by appellees.

It was stipulated at trial that appellant did not support or communicate with his child from January 13, 1981, until the day of the trial, September 8, 1982. This was a period of approximately one year and eight months. The failure of appellant to pay child support or communicate with his minor child was found by the probate judge to constitute abandonment, thus dispensing with the necessity of obtaining appellant's consent to the adoption of his minor child by appellees.

Statutory provisions involving the adoption of minors are strictly construed and applied. *Roberts* v. *Swim*, 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980). The holding of the Arkansas Supreme Court in *Harper* v. *Caskin*, 265 Ark. 558, 580 S.W.2d 176 (1979), places a heavy burden upon the party seeking to adopt a child without the consent of a natural parent of proving by clear and convincing evidence that the parent has failed significantly or without justifiable cause to communicate with the child or to provide for the care and support of the child as required by law or judicial decree. In *Kelly* v. *Kelly*, 264 Ark. 865, 575 S.W.2d 672 (1979), the

Supreme Court defined clear and convincing evidence as being:

> Evidence by a credible witness whose memory of the facts about which he testifies is distinct and whose narration of the details thereof is exact and in due order and whose testimony is so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the facts related is clear and convincing. (cites omitted). This measure of proof lies somewhere between a preponderance of the evidence and proof beyond a reasonable doubt. (cites omitted). It is simply that degree of proof which will produce in the trier of fact a firm conviction as to the allegation sought to be established. (cites omitted).

While we review probate proceedings *de novo* on the record, it is well-settled that the decision of a probate judge will not be disturbed unless clearly erroneous (clearly against the preponderance of the evidence), giving due regard to the opportunity and superior position of the trial judge to judge the credibility of the witnesses. A.R.C.P. Rule 52 (a); *Henson* v. *Money*, 1 Ark. App. 97, 613 S.W.2d 123 (1981).

Judge Kimbrough thoroughly covered the evidentiary issues in his findings of fact. In summary, the court found from the facts and evidence that appellant and his family knew at all times where appellee's mother's family lived and made no inquiry or effort through them to learn of appellee's whereabouts and that of the minor child except for one brief contact with appellee's brother; that appellant was aware at all times that the child support payments went to appellee from the Clerk's office to her mother's home in Alma; that appellant knew appellee and the minor child went to Kansas City to live as appellee's husband had a job there and this information was disclosed by word of mouth, by correspondence and by phone call to appellant's sister to verify the address and phone number which appellee supplied to appellant; that there was no effort or intention on the part of appellee, her husband, family or otherwise to

not make her whereabouts and that of the minor child known at any time to appellant; and that appellant had frequent contact by reason of his employment and union affiliation with the maternal grandfather. In addition, there was a specific finding by the trial court that the adoption was in the best interest and welfare of the minor child.

Appellant's contention that he had justifiable cause not to pay child support or communicate with the minor child for more than twelve months is without merit. The thrust of his argument is that his justifiable cause came about as a direct result of appellee keeping the location of the child a secret. The record reveals that appellant made one attempt to inquire of his former in-laws as to his daughter's whereabouts following the move to Kansas. Appellant was employed by the Whirlpool Corporation in Fort Smith and his former father-in-law was his union representative. The testimony was in conflict as to what occurred on that date between appellant and his former in-laws. Appellant testified that he went to their home at approximately 9:00 a.m. and was not allowed to speak to them. Appellant stated that he made no further efforts to contact appellee's parents as he felt that "it would do no good". Appellee's mother testified that she was aware of her daughter's whereabouts at all times following her remarriage. She further testified that appellant came to their home on one occasion at 6:30 a.m. to inquire about his daughter and they were still in bed. She stated she had no hostility toward appellant and that appellant had always known that he could telephone them at any time to inquire about his daughter. Appellee wrote a letter to appellant shortly before their move to Kansas informing him of her new address, phone number, and assuring him that he could visit with his daughter either in Kansas or Alma. Shortly thereafter, appellant and his attorney wrote to appellee in Kansas City and the letter was returned as "not deliverable". Appellee testified that she never changed her address in Kansas City. Appellant testified that he then attempted to telephone appellee at the number she had provided and was unable to reach her as he either got a recording or static on the line. Appellee testified that she maintained the same phone number the entire time she resided in Kansas and that it was never disconnected.

Appellant continued to pay child support to the clerk of the court for another month and a half. Appellant testified that he then consulted with his attorney in Oklahoma and made the decision to discontinue child support payments based upon his perception that he was being denied his visitation rights. It is important to note that the above events occurred during a two-month period commencing with appellees' move to Kansas in November 1980, and ending in January 1981, when appellant made his last child support payment. Appellees both testified that at no time did they seek to keep appellant from seeing his child or keep her whereabouts a secret.

The asserted justifiable cause of appellant in his failure to support or communicate with the minor child is not supported by the evidence. In this regard, the probate judge found and stated the following in his decree:

> That the Respondent contends that he had justifiable cause in ceasing to make the payments of child support, and was prevented from having contact with the minor child, for the reason that he did not know where the Petitioner mother and child lived; that his efforts for help from his attorney in the divorce case, or an opportunity to talk with the Court in that case, were not productive; and that he was reluctant to talk to the natural mother's parents as they had said previously that they didn't want to be involved; so he therefore unilaterally terminated the child support payments and waited for reasons known to himself until he learned where the child was, which knowledge he contends first came to him as a result of this adoption proceeding being filed and processed and notice being issued therein.

> . . . .

> That the facts, testimony, and circumstances of this case demonstrate by clear and convincing evidence that Respondent natural father made no genuine or diligent effort to contact, locate, communicate with, support or assist his minor child herein concerned, from and since

January, 1981. That his actions were voluntary and constituted abandonment, and a failure to communicate with or provide care and support for the minor child as required by law and judicial Decree, so that his consent to this adoption is not required.

Giving due regard and deference to the superior position of the probate judge to determine the weight of evidence and the credibility of the testimony, we cannot conclude that his ruling that appellant did not have justifiable cause to not support or communicate with the minor child was error. Recognizing that the father's duty to support his minor child cannot be excused on the basis of the conduct of others, unless that conduct prevents him from performing his duty, *Green* v. *Green*, 232 Ark. 868, 341 S.W.2d 41 (1960), we cannot say that the probate judge's finding to the contrary is clearly against the preponderance of the evidence.

We believe the probate judge correctly found appellees met their heavy burden of proving by clear and convincing evidence that appellant had failed significantly and without justifiable cause to communicate with or to provide for the care and support of the minor child, so that the appellant's consent to the adoption was not required.

Affirmed.

GLAZE, J., dissents.

TOM GLAZE, Judge, dissenting. I dissented in *Henson* v. *Money*, 1 Ark. App. 97, 613 S.W.2d 123, *aff'd*, 273 Ark. 203, 617 S.W.2d 367 (1981), and for similar reasons, I do so here. In my opinion, *Henson* was a deplorable decision, and the decision reached in the instant case is no better.

The threshhold issue is whether the appellant's consent to adoption was required under Ark. Stat. Ann. § 56-207 (a) (2) (Supp. 1983). That statutory provision dispenses with the non-custodial parent's consent if he or she fails significantly without justifiable cause for a one-year period to communicate with or to support his or her child as required by law or judicial decree. Before today, our appellate courts have

construed § 56-207 (a) (2) in seven published opinions. In three cases, the courts affirmed the trial court's finding that the non-custodial parent justifiably withheld his or her support/contact with the child. *See Loveless* v. *May,* 278 Ark. 127, 644 S.W.2d 261 (1983); *Harper* v. *Caskin,* 265 Ark. 558, 580 S.W.2d 176 (1979); and *Chrisos* v. *Egleston,* 7 Ark. App. 82, 644 S.W.2d 326 (1983). In the other four cases, the courts held the non-custodial parents' consents were not required because they had failed without justifiable cause to support or communicate with their children. *See Henson* v. *Money, supra; Pender* v. *McKee,* 266 Ark. 18, 582 S.W.2d 929 (1979); *Watkins* v. *Dudgeon,* 270 Ark. 516, 606 S.W.2d 78 (Ark. App. 1980); and *Brown* v. *Fleming,* 266 Ark. 814, 586 S.W.2d 8 (Ark. App. 1979). The Supreme Court cases of *Harper* and *Pender* are controlling when considering whether a non-custodial parent's consent is necessary under § 56-207 (a) (2). Unfortunately, these two decisions tend to lead us in opposite directions. In *Harper,* the court construed § 56-207 (a) (2) for the first time and held that one wishing to adopt a child without a parent's consent must show by *clear and convincing evidence* that the parent has failed without justifiable cause to support or communicate with his or her child. Justice Fogleman wrote in a concurring opinion in *Harper* that the clear and convincing burden adopted by the majority was incorrect; he opined a preponderance of the evidence was the correct standard. The *Harper* court refused to dispense with the father's consent even though he had paid only $100 child support during a one-year period. Although the father had epilepsy and was unemployed, he was a veteran and his child was entitled to V.A. benefits, which he did not provide because the mother said that she was not interested in receiving such benefits. Because the mother prevented him from doing so, the father also had not visited with his child for nearly three years. He made no effort to petition to court to gain access to his child. Nonetheless, the court in *Harper* imposed a heavy burden on the mother to prove the father's failure to support or communicate was without justification and affirmed the lower court's finding that she did not meet that burden.

Two months after *Harper,* Justice Fogleman authored *Pender* v. *McKee.* The Supreme Court affirmed the lower

court, but this time it found the father's consent was not required. In *Pender,* the father apparently paid $615 in support for three children over a period of approximately two and one-half years. During most of this time, either the paternal grandparents or Social Services, *vis a vis,* the adopting parents, the McKees, had custody of the father's child. The father asserted his failure to pay support was justified because no one had asked him to pay anything, nor had any court ordered him to make payments. The father had visited his daughter regularly, and while she was at his parent's home, he bought food and milk for her. The court held the father was not relieved of his obligation to support his child because someone else had custody of her. It concluded a parent must furnish the support and maintenance himself, and the duty is a personal one. *But see Loveless* v. *May, supra* (mother's failure to provide support was found justified because she was not advised or ordered to contribute to her child's support, and the appellants, seeking adoption, had gained custody of the child by juvenile court order).

Relying heavily on *Pender,* the courts in *Watkins* v. *Dudgeon, supra,* and *Henson* v. *Money, supra,* held the respective fathers' consents were not required. *Henson* is worthy of discussion. There the father supported his son for nine years but withheld child support for a fifty-one week period because of a dispute with his former wife and her new husband over visitation rights. The Supreme Court held the father was not justified in withholding the support, stating he could have petitioned the court to compel his ex-wife to abide by the terms of their divorce decree concerning visitation privileges with his child. *But see Harper* v. *McCaskin* (wherein father never petitioned the court to enforce visitation rights when ex-wife prevented him from seeing child, yet court held father's failure to contact child justifiable and not a sufficient ground to dispense with his consent).

The foregoing cases reflect inconsistent applications of known principles, which in turn pose real problems in deciding any adoption case involving a consent issue under § 56-207 (a) (2). From my review of the cases, I come to this

conclusion: One should rely heavily on the language contained in *Harper* when arguing that the non-custodial parent's consent should be required; but when one is contending the parent's consent is unnecessary, cite liberally the principles contained in *Pender*.

In the present case, the majority fails to cite *Pender* at all and borrows little from *Harper*. It does rely on a case cited in *Pender* for the rule that a father's duty to support his minor child cannot be excused on the basis of the conduct of others, unless that conduct prevents him from performing his duty. *Green* v. *Green*, 232 Ark. 868, 341 S.W.2d 41 (1960). *Green* was a case in which a father was found errant in failing to make monthly payments to his son's education fund as directed by the court's decree. The Supreme Court dismissed the father's argument that his former wife moved to another State and prevented him from visiting his son; it ordered the father to continue the monthly payments and directed that all arrearages be reduced to judgment. Whether the holding or rule in *Green* is applicable to adoption proceedings is most dubious in my opinion. After all, in most adoption cases, a court terminates a parent's rights to his child; few consequences of judicial action are so grave as the severance of natural family ties. *See Santosky* v. *Kramer,* 455 U.S. 745 (1982). Even assuming the rule in *Green* is applicable in adoption cases, we are met with a different burden of proof — a preponderance of the evidence is employed when imposing support obligations while clear and convincing evidence is required to terminate a parent's rights to his or her child. Here, the majority court held that the father, Terry Dodson, was unjustified in withholding child support payments and in failing to communicate with his child, concluding the mother's conduct did not prevent him from performing his duties. Under the circumstances of this case, the court, at most, (in a proper action) should enforce and reduce to judgment any arrearages in support Terry Dodson has accrued; it should not, however, permit the law to take this father's child away. A fair review of the facts clearly shows the mother made no effort to comply with the visitation provisions contained in the parties' divorce decree. The undisputed evidence also reveals that of the twenty months the father did not support or communicate

with his child, the mother had informed him of her whereabouts just one time, *viz.,* when she first moved to Kansas City, Missouri, where she resided for only six months.

A more detailed account of the sequence of events is necessary. Terry Dodson met all of his fatherly duties from the time his daughter was born on January 19, 1979, until January 13, 1981, or two months after her mother, Debra Donaldson, married Melvin Donaldson and moved to Kansas City. Until this time, Terry visited his daughter as often as her mother would permit, even though the parties' divorce decree directed he was entitled to visit every Saturday.

The Donaldsons moved to Kansas City in November, 1980; Debra admitted she never attempted to communicate with Terry after January 31, 1981. She made no efforts to obtain child support from Terry, nor did she make the parties' daughter available for visitation, as ordered by their divorce decree. Curiously, Debra's parents' address was on the records of the court clerk, whose duty it was to receive support payments. Thus, even though Debra moved at least three times during the twenty-month period involved here, only her parents knew where she lived — with the possible exception that Terry might have known of her move to Kansas City in November, 1980. However, accepting the fact he knew Debra resided in Kansas City, she lived there only six months. She candidly admitted that she never told Terry of her subsequent moves to Mountainburg in April, 1981, and to Fort Smith in February, 1982. Terry resided in Fort Smith throughout this entire ordeal.

The trial court (and this Court's majority) placed much emphasis on the fact that Terry failed to contact Debra's parents to discover her whereabouts. To require a divorced parent to contact his or her former mother- or father-in-law to locate his former wife or husband is pure folly. The folly is even greater in the situation here considering that on one occasion, Terry *did* go to the home of his former in-laws, but they refused to talk to him about where she lived. Their excuse for not telling Terry where Debra lived was that it was

too early in the morning, *viz.*, 6:30 A.M., when he requested this information. Of course, they could have given him the address in as much time as it took them to tell him to leave. At least, it would seem, they could have called him later and made arrangements which accommodated their schedule. On another occasion, according to Terry, these same maternal grandparents said that they did not want to be involved in his and Debra's business. Furthermore, the evidence reflects that pending Terry's and Debra's divorce, Terry was threatened with arrest by his in-laws when he went to their home to exercise his visitation rights with his daughter. Surely, in view of these circumstances, no one could reasonably expect Terry to seek information from such a hostile source. Neither do I agree that Terry was required to file an action to enforce his visitation rights, especially in view of Debra's admission that she did not tell him when she moved to Mountainburg and Fort Smith. Certainly, the court in *Harper* v. *Caskin* did not require such legal action.

The majority's result imposes a greater duty upon the father in this case than the mother, who has an equal and correlative legal duty to discharge. Terry was directed by the court to pay child support — which he did until two months after Debra moved to Kansas City. Debra, on the other hand, was to afford Terry visitation with their child every Saturday — which she failed to do from the time she left the State in November, 1980, until this matter was tried in September, 1982. Yet, the majority would require Terry to pay child support to his former in-laws who, in turn, would forward it wherever Debra might live at the time, albeit unknown to Terry. At the same time, the majority requires no action by Debra to provide Terry with the opportunity to visit his daughter. The facts of this case do not warrant a court's order to dispense with this father's consent and to terminate his legal — not to mention his emotional — ties with his daughter.

Section 56-207 (a) (2) affords a less stringent standard for dispensing with consent than that required under prior law on adoptions. As a consequence, more adoption cases are now being filed involving children of divorced parents.

Warring divorced parents commonly feud over support and visitation issues, and because of § 56-207 (a) (2), we are seeing their disputes in probate court in the form of adoption proceedings. The Arkansas General Assembly should review our 1977 Adoption Act and either repeal or modify the language contained in § 56-207 (a) (2). I do not believe the members of the General Assembly envisioned terminating parental rights in situations such as those presented in *Henson* v. *Money* or in the case at bar.[1]

I would reverse.

---

[1]*Cf. A. B.* v. *Arkansas Social Services*, 273 Ark. 261, 620 S.W.2d 271 (1981), in which Social Services, proceeding under Ark. Stat. Ann. § 56-128 (Supp. 1980), attempted to terminate a "putative" father's parental rights; even though he was a felon serving time in the penitentiary and had never supported his child, the Supreme Court refused to sever his parental rights because the State failed in its proof to show the requirements under § 56-128. If the State had proceeded under the 1977 Adoption Act, *ivz.*, § 56-220, the result most likely would have been different. In fact, consent, notice and an opportunity to be heard is not provided for a putative father under §§ 56-206 (a) (2) and 56-207 (a) (3) of the Adoption Code.