Rachael MARTIN *v.* Greg MARTIN and Alice Martin

93-935                                        875 S.W.2d 819

Supreme Court of Arkansas
Opinion delivered May 2, 1994

*Martha P. Gilpatrick*, for appellant.

*Gibson & Rhodes*, by: *Richard Rhodes*, for appellees.

TOM GLAZE, Justice. In this adoption case, Rachael, the natural mother, and the adoptive parents, Rachael's brother and sister-in-law, appeared with an attorney before the probate judge on December 10, 1991, to present a petition for adoption. The judge, however, refused to approve the petition and enter an interlocutory decree because Rachael had executed her consent to adoption only that day (December 10th). By law, Ark. Code Ann. § 9-9-209(b)(1) (Repl. 1993), Rachael had ten days within which she could withdraw her consent, and no order of adoption could be entered prior to the withdrawal period. Ark. Code Ann. § 9-9-212(a) (Repl. 1993). The judge explained this statutory withdrawal period to Rachael in open court.[1] Afterwards, the adoptive parents filed their petition for adoption on December 13, 1991, and on December 23, 1991 — thirteen days after Rachael executed her consent — the probate judge signed and entered the interlocutory adoption decree.

Rachael did not perfect an appeal from the trial judge's decree or motion for a new trial under ARCP Rule 59. However, eighty-seven days after entry of the adoption decree, she filed her petition to set it aside. While she alleged that the adoptive parents obtained her consent through fraud and duress, the judge found no fraud and refused to set aside her consent and the adoption decree.

Significantly, as we address more fully below, Rachael chose not to challenge on appeal the lower court's ruling that no fraud or duress occurred. Instead, she argues the adoptive parents failed to comply strictly with the provisions of three adoption statutes,

---

[1]The consent itself was verified by Rachael and it provided she understood she had the right to withdraw her consent within ten days after execution of the consent.

Ark. Code Ann. § § 9-9-209, 9-9-212(a) and 9-9-214 (Repl. 1993), and the court erred in refusing to set aside the interlocutory decrees for such noncompliance. In sum, Rachael contends her consent was not properly or timely executed and a hearing on the adoption petition was not timely held.

The adoptive parents, on the other hand, rejoin by pointing out that the statutory provisions were complied with either by strict or substantial compliance. They emphasize, too, the trial judge's findings that Rachael had been fully apprised in open court that she had ten days to withdraw the consent, that the decree was entered thirteen days after she executed her consent, and that she waited nearly three months from when she signed the consent before filing her petition to set aside the adoption decree.

Rachael's arguments ignore the settled rule that consent to adoption can be withdrawn after an interlocutory order only upon a showing of fraud, duress, or intimidation. *Pierce* v. *Pierce*, 279 Ark. 62, 648 S.W.2d 487 (1983); *McClusky* v. *Kerlan*, 278 Ark. 338, 645 S.W.2d 658 (1983); *see also* Ark. Code Ann. § 9-9-209(a) (Repl. 1993). As previously mentioned, Rachael does not argue that her consent was obtained by fraud and duress.

It is suggested that the rule in *Pierce* and *McClusky* presupposes a consent executed in strict compliance with the provisions of § 9-9-209(a) and other adoption provisions. Rachael cites four cases in support of her argument. *Swaffar* v. *Swaffar*, 309 Ark. 73, 827 S.W.2d 140 (1992); *In the Matter of the Adoption of Parsons*, 302 Ark. 427, 792 S.W.2d 681 (1990); *Dale* v. *Franklin*, 20 Ark. App. 98, 733 S.W.2d 747 (1987); *Roberts* v. *Swim*, 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980). These cases, however, are factually different from the situation before us now since those cases involved persons who were not shown to have executed a consent, had timely withdrawn the consent or the person successfully showed the probate court had entered its interlocutory adoption decree before the ten-day withdrawal period had expired. The holdings in those cases are consistent with Ark. Code Ann. § 9-9-206 (Repl. 1993) which requires a written consent before an adoption can be granted and with § 9-9-212(a) which further provides that no orders of adoption, interlocutory or final, may be entered prior to the ten-day period of

withdrawal. In this same vein, this court has held that the jurisdiction of the probate court to order an adoption depends upon the consent of the person legally authorized to represent the minor. *Swaffar*, 309 Ark. 73, 827 S.W.2d 140. Here, unlike the cases cited by Rachael, the record supports the trial judge's ruling that Rachael's consent was given. And, while Rachael argues otherwise, the record also reflects that the trial court entered its adoption decree *thirteen* days after she executed her consent — three days after the ten-day withdrawal period had expired. In signing the consent, Rachael also verified she knew she had only ten days to revoke her consent. Clearly, the trial court had Rachael's written consent and jurisdiction of the case when it entered its adoption decree.

Rachael complains that the adoption statutes provide that she was entitled to a new hearing after the December 10 hearing and after the adoptive parents filed their adoption petition on December 13. *See* § § 9-9-212 and 9-9-214(c). She also argues her consent failed to contain the name and address of the probate clerk whom Rachael should file with when withdrawing her consent. *See* § 9-9-209(b)(1) and (2). Regarding Rachael's complaint that a second hearing should have been held, the probate court certainly had authority to excuse the parties' appearance under § 9-9-214. And as to any omission of the clerk's name and address from the consent, Rachael obviously suffered no prejudice in this respect since she never attempted to withdraw her consent until long after the ten-day withdrawal period had expired. In any event, Rachael's complaints do not involve jurisdictional matters like that involving the execution of Rachael's consent as discussed above.[2]

Rachael's argument seems to suggest that any noncompliance with the adoption code, however slight, would prohibit a probate court's entry of an adoption decree. Such suggestion by its very nature would extend Arkansas's settled rule so as to permit an adoption order to be set aside for a reason other than fraud, duress, or intimidation. Certainly, no statute is cited to support this idea and our case law, particularly this court's deci-

---

[2]We note that statutory exceptions are provided where consent is not required for certain persons or parents in specific situations described in Ark. Code Ann. § 9-9-207 (Repl. 1993).

sion in *Pierce*, disabuses us of any such notion. There, the natural parent's argument to set aside the interlocutory decree was based solely upon her contention that Ark. Stat. Ann. § 56-213 (Supp. 1981) [now Ark. Code Ann. § 9-9-213 (Repl. 1993)] had not been complied with since the child had not lived in the adoptive parents' home for six months. This court rejected the natural mother's request to revoke her consent for this statutory noncompliance, stating her consent could only be withdrawn upon showing that fraud, duress, or intimidation had been practiced.[3]

■ In the present case, we hold the record supports the trial judge's findings that Rachael's ten-day period for withdrawing her consent had been explained to and afforded her before the adoption decree was entered. Furthermore, as was the situation in *Pierce*, the failure, if any, of strict compliance with the provisions argued by Rachael here are simply insufficient grounds to set aside the trial court's decree.

■ Arkansas adoption statutes ensure adoption decrees obtained under the law possess that necessary and required finality so that an adoptive parent is not freed of the parental obligations he or she has willingly undertaken. *See Pham* v. *Truong*, 291 Ark. 442, 725 S.W.2d 569 (1987). This finality and stability to be given adoption decrees is further reflected by Ark. Code Ann. § 9-9-216(a) (Repl. 1993), which provides that, after one year, an adoption decree cannot even be questioned for (1) fraud, (2) misrepresentation, (3) failure to give any required notice, or (4) lack of jurisdiction of the parties or of the subject matter.[4] The commentary to the Uniform Revised Adoption Act sets out the importance and reasoning in keeping adoption orders intact by providing that "[t]he policy of stability in a family relationship, particularly when a young minor is involved, outweighs the possible loss to a person whose rights are cut off through fraud and

---

[3] The *McClusky* case cited above does not reflect why the trial court set aside the interlocutory decree there, but just referenced the consent as "not valid." This court found the consent valid on appeal, but again, did not present the facts making the consent an issue. The court did reiterate the rule that consent could not be withdrawn after entry of an adoption decree except upon a showing of fraud, duress, or intimidation.

[4] Of course, this statutory limitation is subject to a party's having filed a direct appeal from an adoption decree and disposition of the appeal. No such appeal occurred in this case.

ignorance." *See* Unif. Adoption Act § 15, 9 U.L.A. 62 (1988), which is comparable to § 9-9-216 of the Arkansas Adoption Act.

■ In conclusion, we note that the adoptive parents now have had custody of the infant involved here for two years and four months. No fraud or duress was employed in obtaining Rachael's consent or custody of her child. To the contrary, Rachael was fully informed by the probate judge that she had only ten days within which she could withdraw her consent. For whatever reason, she waited nearly three months to withdraw it. To set side the trial court's decree on the grounds Rachael asserts would seriously undermine the stability and finality lawfully intended for adoption decrees once signed and entered. For the reasons discussed, we affirm the probate judge's decision.

DUDLEY, NEWBERN and BROWN JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. A probate court granted an interlocutory decree of adoption. Eighty-seven days later the biological mother moved to set aside the decree. The probate court denied the motion. The biological mother appeals. The court of appeals certified the case to this court. The majority opinion affirms the ruling of the probate court. I would reverse.

In October 1991, about a month before her child was due, Rachael Martin, nineteen years old and single, asked her brother, Greg Martin, and his wife, Alice, if they wished to adopt her child when it was born. Greg and Alice responded affirmatively. Soon afterwards, the three, along with Rachael's mother, discussed the matter with an attorney. The baby was born on November 25, 1991, and appellees Greg and Alice Martin immediately took custody of the child. On December 6, 1991, Greg, Alice, and Rachael met with the attorney in his office in Osceola and employed him to represent them in the adoption.

On the morning of December 10, 1991, the parties met the attorney at the courthouse in Blytheville, and, in the hallway of the courthouse, Rachael signed a consent to adoption. Neither the consent to adoption nor the petition for adoption had been filed, but the attorney asked Probate Judge Ralph Wilson, Jr. to hear the matter. The parties and the baby were present, and a hearing was held that morning. Judge Wilson recognized there were irregularities because he refused to sign a precedent submitted at the

conclusion of the hearing. There was testimony that the judge requested that the attorney "redo the papers." The consent and petition for adoption were not filed until three days later, on December 13.

On December 20, or ten days after the hearing on the adoption, the attorney delivered a precedent for an interlocutory decree of adoption to Judge Wilson's chambers in Osceola. Judge Wilson did not grant the order at that time, but instead waited until December 23, which was ten days after the consent had been filed, and entered the decree.

The consent did not state that Rachael could withdraw her consent by filing an affidavit with the Probate Clerk of the Chickasawba District of Mississippi County. Rachael testified that about a month after the decree had been signed she told her brother she wanted her child back. In March 1992, she filed the petition to set aside the interlocutory decree of adoption. Probate Judge Rice Van Ausdall heard the petition and declined to set aside the decree. The attorney originally employed to represent the parties in the adoption does not represent either side in this appeal. The various components that comprise the law of adoption require reversal in my opinion.

## I. Rules of Construction

The seminal adoption case in this State is *Morris* v. *Dooley*, 59 Ark. 483, 28 S.W. 30 (1894), a case in which the title to land depended on the validity of the adoption decree. In a collateral attack on the adoption decree, Morris contended that Dooley's adoption was void because the decree of adoption failed to recite that Dooley, at the time of adoption, was a resident of the county in which the decree was granted. The trial court upheld the adoption decree. In reversing we made three landmark holdings. First, we stated that the probate court was a court of limited jurisdiction and had only such jurisdiction as conferred by statutes. As part of this holding, we stated that the orders of a court of limited jurisdiction do not enjoy a presumption of regularity, as do the orders of a court of general jurisdiction. Consequently, all jurisdictional facts must be recited in a final adoption decree or else it is void, and, upon collateral attack, the jurisdictional facts cannot be supplied in the subsequent pro-

ceeding. Second, we held that, since the probate court is a court of limited jurisdiction and its only authority comes from statute, it has no authority to hear an adoption matter other than in the manner set out in the adoption statute. Adoption is not mentioned in our state constitution. Third, we held that adoption was unknown to common law and exists only as a special proceeding, and, therefore, the adoption statutes must be strictly construed.

At the time, this court was composed of a chief justice and four associate justices. The vote was three to two. Justice Riddick wrote a strong dissenting opinion in which Chief Justice Bunn concurred, but the majority opinion has consistently been followed.

## II. Collateral Attack

A second important case is *Minetree* v. *Minetree*, 181 Ark. 111, 26 S.W.2d 101 (1930). Again, the case involved title to land and a collateral attack on an adoption decree. The infant's mother was deceased, and the decree reflected that the father was a resident of Mississippi County and that the child lived with the father. However, Mississippi County has two county seats: Blytheville is the county seat of the Chickasawba District, and Osceola is the county seat of the Osceola District. We held the decree was void because the decree did not reflect that either the father or the child lived in the Chickasawba District of Mississippi County.

By the time of *Minetree*, 1930, this court had seven members, and the vote was four to three. Justice Frank G. Smith wrote a moving dissent in which he urged, in part, that substantial compliance with the statutes should be sufficient in order to give effect to the legislative intent, but the majority opinion has consistently been followed in cases involving jurisdictional recitations. For example, in *Ozment* v. *Mann*, 235 Ark. 901, 903, 363 S.W.2d 129, 130-31 (1962), a case in which neither the petition nor the order recited the residence of the boys to be adopted, this court wrote: "[W]e have repeatedly held that an adoption order is void if it fails to recite such essential jurisdictional facts. *Dean* v. *Brown*, 216 Ark. 761, 227 S.W.2d 623." In *Poe* v. *Case*, 263 Ark. 488, 490, 565 S.W.2d 612, 613 (1978), another collateral attack case, we wrote:

The probate court is a court of special and limited jurisdiction, having only such jurisdiction and powers as are conferred by the constitution or by statute, or necessarily incident to the exercise of the jurisdiction and powers specifically granted. *Hilburn* v. *First State Bank*, 259 Ark. 569, 535 S.W.2d 810. There is no mention of adoption, child custody or visitation rights in the Arkansas Constitution. Jurisdiction of adoption proceedings has been vested in the probate court by statute. Adoption proceedings were unknown to the common law, so they are governed entirely by statute. *Morris* v. *Pendergrass's Admr.*, 59 Ark. 483, 28 S.W. 30. See also, *Spencer* v. *Franks*, 173 Md. 73, 195 A. 306, 114 ALR 263 (1937).

### III. Direct Attack

Cases involving direct attack involve a different standard. On direct attack, statutory provisions involving the adoption of minors are to be strictly construed and applied. In the case of *In re Adoption of Parsons*, 302 Ark. 427, 432, 791 S.W.2d 681, 683-84 (1990), we wrote:

We reaffirmed our position of giving careful protection to a natural parent's rights in *In The Matter of the Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986) (citing *Woodson* v. *Lee*, 221 Ark. 517, 254 S.W.2d 326 (1953) (quoting *In re Cordy*, 169 Cal. 157, 146 P. 532 (1914))):

. . . the power of the court in adoption proceedings to deprive a parent of her child, being in derogation of her natural right to it, and being a special power conferred by the statute, such statute should be strictly construed; that 'the law is solicitous toward maintaining the integrity of the natural relation of parent and child; and in adversary proceedings in adoption, where the absolute severance of that relation is sought, without the consent and against the protest of the parent, the inclination of the courts, as the law contemplates it should be, is in favor of maintaining the natural relation. . . . Every intendment should have been [in] favor of the claim of the mother under the evidence, and if the statute was open to con-

struction and interpretation it should be construed in support of the right of the natural parent.'

We have frequently written that there must be strict compliance with the statutory requirements for the petition, but we have not been unreasonable in finding that compliance. In *A & B v. C & D*, 239 Ark. 406, 390 S.W.2d 116, *cert. denied*, 382 U.S. 926 (1965), we used the words "substantial compliance" in discussing a direct attack, but, in reality, we held there was full compliance with the statute. The applicable paragraph is as follows:

> Finally, it is urged that the consent to adoption was not properly executed. Appellants point out that the adoption statute requires a written consent, verified by affidavit, and they assert that Mrs. Ward only witnessed and acknowledged B's signature. It is true that the evidence does not reflect that B held up her hand while Mrs. Ward recited a formal oath, but we think there was substantial compliance with the statutory requirement. Mrs. Ward was present in the room; Mrs. Ward *did* see B sign the consent; Mrs. Ward *did hear* the explanation given B by the attorney representing C and D, and it is obvious that this appellant executed the instrument with the full intent to do that which is required by the statute. Ark. Stat. Ann. § 28-206 (Repl. 1962) provides:
>
> "Every affidavit shall be subscribed by the affiant, and the certificate of the officer before whom it is made shall be written separately, following the signature of the affiant."

*Id.* at 413-14, 390 S.W.2d at 120.

Likewise, in *Taylor v. Collins*, 172 Ark. 541, 289 S.W.2d 466 (1927), we said compliance with the statute was "mandatory" and that there was "substantial compliance" with it. The court of appeals, in *Arkansas Department of Human Services v. Couch*, 38 Ark. App. 165, 832 S.W.2d 265 (1992), adopted our language from *Taylor v. Collins*. However, we have never intended to vary our requirement that on direct appeal there be strict compliance because, as we have often written, adoption statutes are in derogation of the common law and must be strictly construed. *See*

*Swaffar* v. *Swaffar*, 309 Ark. 73, 827 S.W.2d 140 (1992) and cases cited therein. This is a case of the direct appeal of an adoption decree.

IV. The Difference Between the Two Kinds of Appeal

In *Taylor* v. *Collins*, 172 Ark. 541, 289 S.W.466 (1927), we explained the difference between the standards for collateral attack and direct appeal. In that case, the petition for adoption alleged that the child was a resident of the county, but his name was unknown and could not be ascertained. Thus, it was impossible to comply with that part of the statute that required the name of the child be set out in the petition. *We explained that this might constitute error on direct appeal, but not on collateral attack because, once jurisdiction has been established, regularity is presumed.*

Another case setting out the difference in the proceedings is *Avery* v. *Avery*, 160 Ark. 375, 255 S.W. 18 (1923). In that case, we held that, unless the jurisdictional facts appear in the record, an adoption is void because jurisdiction is never presumed for a court of limited jurisdiction. However, if the jurisdictional facts do appear, the adoption is valid, and the jurisdictional facts recited cannot be attacked in a collateral proceeding. We explained that once jurisdiction is shown, the proceedings are presumed to be regular, but again wrote that there is a difference between collateral attack and direct appeal as follows:

> ["]Appellant contends that the order is void and subject to collateral attack because it does not recite that it was shown by two witnesses that the residence of the father was unknown. But the jurisdiction of the court did not, in our opinion, depend on such evidence, nor was it necessary to make such a recital in the record. Making the order of adoption without such proof would be error, and might be ground to set such order of adoption aside, on petition of the father of the adopted child, but neither D.L. Coleman, on whose petition the order of adoption was made, nor any one claiming through him, as plaintiff does, would be allowed to object to the judgment on that ground."

*Id.* at 384, 255 S.W. at 21 (quoting *Coleman* v. *Coleman*, 81 Ark. 7, 12 (1906)).

## V. Subsequent Legislative Provisions

The General Assembly recognized a need to provide some protection to adoptive parents and adoptive children, who had long been united, from separation. As a result, a two-year statute of limitations was passed in 1949. Although that statute has now been repealed, we likened it to a two-year statute of adverse possession of a child held under a court order intended to be an order of adoption. *Dean* v. *Brown*, 216 Ark. 761, 227 S.W.2d 623 (1950). A similar statute of limitations exists today as part of the Revised Uniform Adoption Act. That code section provides in part:

> [U]pon the expiration of one (1) year after an adoption decree is issued, the decree cannot be questioned *by any person* including the petitioner, *in any manner upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter* unless, in the case of the adoption of a minor, the petitioner has not taken custody of the minor or, in the case of the adoption of an adult, the adult had no knowledge of the decree within the one-year period.

Ark. Code Ann. § 9-9-216(b) (Repl. 1993) (emphasis supplied).

The court of appeals, in discussing a comparable predecessor statute providing a one-year limitation, wrote: "This statute which is couched in negative language gives rise to a corollary. *For one year following the adoption decree, the adoption may be challenged by any person with an interest.*" *Hensley* v. *Wist*, 270 Ark. 1004, 1006, 607 S.W.2d 80, 82 (Ark. App. 1980) (emphasis supplied), *overruled on other grounds by Wilson* v. *Wallace*, 274 Ark. 48, 622 S.W.2d 164 (1981).

Another part of the Revised Uniform Adoption Act provides that "A consent to adoption cannot be withdrawn after the entry of a decree of adoption." Ark. Code Ann. § 9-9-209(a) (Repl. 1993). This is the statute upon which the majority opinion relies in affirming the case at bar.

In our first case construing this provision, we reversed the ruling of a probate court that had allowed a consent to be withdrawn after the entry of an adoption decree. However, the con-

sent was entered in compliance with the statutes providing the manner for biological parents to consent to adoption, and we implied that the statute presupposes a *valid* form of consent. We wrote: "In making this ruling *we do not imply that consent could not be withdrawn after an interlocutory order upon a proper showing of fraud, duress or intimidation.*" *McCluskey* v. *Kerlen*, 278 Ark. 338, 341, 645 S.W.2d 948, 949 (1983). We cited an Oklahoma case, *In Re: Adoption of Graves*, 481 P.2d 136 (Okl. 1971), as authority for our statement. Our dictum was eminently correct because the statute provides that a consent to adoption cannot be withdrawn after a decree of adoption has been entered, and the statute assumes a consent entered in accordance with the applicable adoption statutes. The cited Oklahoma case fully supports this position. In that case the biological parents sought to set aside an adoption decree and contended that their consent was the result of fraud, coercion, and intimidation. The Oklahoma trial court held that, under a statute with the same provision as § 9-9-209(a), it had no authority to declare the consent invalid after the decree of adoption was entered. The natural parents appealed. The Oklahoma appellate court ruled that the fact that the Uniform Adoption Act contains both a statute of limitations and the statute barring the withdrawal of a consent after a decree has been entered means that some actions can be brought after the decree has been entered, as long as they are brought before the one-year statute of limitations has run. The same reasoning applies to the comparable Arkansas statutes. Thus, the statute presupposes a consent executed in accordance with the applicable statutes, and if the statutes are not complied with, an action can be maintained after an adoption has been granted, as long as the statute of limitations has not run. The statute of limitations had not run in the case at bar.

In our second case involving this provision, we affirmed the probate court's refusal to allow withdrawal of a *valid* consent after the decree of adoption, and in so doing we relied on our first case interpreting this provision, *McClusky*, and, in dictum, said, "[I]t is settled that consent to adoption can be withdrawn after an interlocutory order only upon a proper showing of fraud, duress, or intimidation." *Pierce* v. *Pierce*, 279 Ark. 62, 63, 648 S.W.2d 487, 487 (1983). The quoted dictum is the statement relied upon by the majority opinion. It wholly ignores the con-

cept that the statute prohibiting the withdrawal of a consent after an interlocutory order presupposes a consent executed in accordance with the statute.

## VI. The Case At Bar

The case at bar is a direct attack on the order refusing to set aside the adoption. The first issue is whether the direct attack may be maintained after the interlocutory decree of adoption was entered. The majority opinion holds that it can not be so attacked. I would hold that the attack could be maintained since the form and manner of execution of the consent did not strictly comply with the statute and the action was not barred by the statute of limitations. As stated, section 9-9-209(a) of the Arkansas Code Annotated of 1987, which provides that a consent cannot be withdrawn after the entry of a decree of adoption, presupposes a *valid* written consent. The majority opinion holds otherwise. The holding is contrary to overall design of the Revised Uniform Adoption Act and places little or no weight upon the relinquishment of the natural parents' rights. *See In re Adoption of Infant Girl Banda*, 559 N.E.2d 1373 (Ohio Ct. App. 1988). Here, strict compliance with the statute providing the form of the consent was lacking, and there was very little compliance, certainly not strict compliance, with the statute providing for the form of the petition for adoption. The motion to set aside the interlocutory decree was filed within ninety days of the decree, and obviously within one year of the decree. Thus, the petitioner should be allowed to maintain this action.

### A. The Petition

Two instruments were filed by the parties, the petition for adoption and the consent. The statutes applicable to the petition are as follows. Section 9-9-210 of the Arkansas Code Annotated of 1987 requires that a written and verified petition must be filed with the clerk. Section 9-9-212 provides that, after the written petition is filed, the court shall fix a time and place for hearing the petition. Section 9-9-212 additionally provides that before a judge conducts the hearing on a petition, the period in which the consent can be withdrawn *must* have expired. Section 9-9-209 provides that the consent may be withdrawn within ten calendar days after it is signed. In this case the petition was filed on

December 13, but the parties stipulated that the court held the hearing on December 10, three days before the petition was filed. Further, the parties stipulated that Rachael Martin signed the consent on December 10. Thus, the period for Rachael Martin to withdraw the consent had not passed at the time the hearing was held. This amounted to no compliance with the statutory requirements that a written and verified petition be filed with the clerk prior to setting a hearing date, that a written consent be filed with the clerk, and that the court *then* set a hearing on the petition later than ten calendar days after the consent was signed.

The code further provides that if the period for the withdrawal of the consent has not passed by the time of the court hearing *"the court shall dismiss the petition* and the child shall be returned to the person or entity having custody of the child prior to the filing of the petition." Ark. Code Ann. § 9-9-214(c) & (d) (Repl. 1993) (emphasis added). Rather than dismiss the petition as the statute provides, the trial court granted the interlocutory decree of adoption. This was in direct conflict with the statutory mandate. Consequently, the probate court erred in refusing to set aside the interlocutory decree of adoption that was granted in violation of applicable statutory directives.

### B. The Consent

The statute setting out the requirements for a valid consent was not followed. Both this court and the court of appeals have consistently required strict compliance with the statute providing for a consent to adoption. *Roberts* v. *Swim*, 268 Ark. 917, 597 S.W.2d 840 (1980); *Bemis* v. *Hare*, 19 Ark. App. 198, 718 S.W.2d 481 (1986); *Dodson* v. *Donaldson*, 10 Ark. App. 64, 661 S.W.2d 425 (1983); *Brown* v. *Johnson*, 10 Ark. App. 110, 661 S.W.2d 443 (1983). The reason is the public policy of this state is solicitous toward maintaining the integrity of the natural relationship between parent and child, and a severance of that relationship should be allowed only under carefully defined circumstances. *Roberts*, 269 Ark. at 919, 597 S.W.2d at 841.

Here, the written consent did not inform Rachael that she could withdraw her consent by filing an affidavit with the Probate Clerk of the Chickasawba District of Mississippi County,

and it did not state the address of the clerk. The applicable code sections provide:

> A consent to adopt may be withdrawn within ten (10) calendar days after it is signed or the child is born, whichever is later, by filing an affidavit with the clerk of the probate court in the county designated by the consent as the county in which the adoption petition will be filed. . . .

> The consent shall state that the person has the right of withdrawal of consent and shall provide the address of the probate court clerk of the county in which the adoption will be filed. . . .

Ark. Code Ann. §§ 9-9-209(b)(1) & (2) (Repl. 1993).

In addition, section 9-9-208(a)(3) provides: "The required consent to adoption *shall* be executed in the following manner: . . . (3) . . . in the presence of the court or in the presence of a person authorized to take acknowledgements." Ark. Code Ann. § 9-9-208(a)(3) (Repl. 1993) (emphasis added). The consent was not signed in front of the judge. Joyce Howard, the lawyer's secretary, and a notary public, attested that Rachael signed the consent before her on December 10, 1991. She testified that Rachael signed the consent in the lawyer's office on the 10th, just before Rachael and the adoptive parents, Greg and Alice Martin, went to the courthouse for the hearing. Racahel, as well as Greg and Alice Martin, testified that the petition and the consent were both signed at the courthouse. The trial court found that Rachael signed the consent in the hallway of the courthouse. All of the parties agree that Joyce Howard was not present at the courthouse when Rachael signed the consent. In fact, the adoptive mother, Alice Martin, testified that neither the consent nor the petition had been acknowledged at the time of the hearing before the probate court. The trial court's finding that the documents were signed in the hallway of the courthouse is based upon substantial evidence. Thus, the consent was not executed in the presence of either the court or a person authorized to take acknowledgements and, as a result, was not executed in compliance with the applicable statute.

> The majority opinion holds that it does not matter that there was not strict compliance with the statutory provisions for a con-

sent. The effect is to abandon our long-established public policy that has been solicitous toward maintaining the integrity of the relationship between biological parent and child, and to allow severance of that relationship under less than the statutorily mandated procedures. I dissent.

NEWBERN and BROWN, JJ., join in this dissent.

ROBERT L. BROWN, Justice, dissenting. I join in Justice Dudley's dissent but write to highlight the public policy behind the ten-day wait that must occur after the natural mother consents to adoption and before the hearing on the adoption petition can take place.

Our statutes require that ten-day period:

> (b)(1) A consent to adopt may be withdrawn within ten (10) calendar days after it is signed or the child is born, whichever is later, by filing an affidavit with the clerk of the probate court in the county designated by the consent as the county in which the adoption petition will be filed. . . .

Ark. Code Ann. § 9-9-209(b)(1) (1987).

> (a) Before any hearing on a petition, the period in which the relinquishment may be withdrawn under § 9-9-220 or in which consent may be withdrawn under § 9-9-209, whichever is applicable, must have expired. . . .

Ark. Code Ann. § 9-9-212 (1987).

> (c) If at the conclusion of the hearing the court determines that the required consents have been obtained or excused and the required period for the withdrawal of consent and withdrawal of relinquishment have passed and that the adoption is in the best interest of the individual to be adopted, it may (1) issue a final decree of adoption; or (2) issue an interlocutory decree of adoption . . . .

> (d) If the requirements for a decree under subsection (c) have not been met, the court shall dismiss the petition and the child shall be returned to the person or entity having custody of the child prior to the filing of the petition.

Ark. Code Ann. § 9-9-214(c) & (d) (1987).

An essential plank of the Adoption Code is the ten-day period during which time the natural mother can change her mind and renege on the adoption of her child. The obvious justification for the wait is that the decision is one of monumental importance that must be made coolly and deliberately. To rush pell mell into a hearing before a probate judge with all the inherent pressure and finality that the hearing suggests on the same day of the consent undermines and erodes this policy considerably.

In sum, the mother must have an unobstructed period before the adoption hearing to reconsider her decision, and that did not occur in this instance. We strictly construe and apply our adoption statutes. *Swaffar* v. *Swaffar*, 309 Ark. 73, 827 S.W.2d 140 (1992); Norris v. Dunn, 184 Ark. 511, 43 S.W.2d 77 (1931). I accordingly dissent.

NEWBERN, J., joins.