Josephine Linker Hart, Justice, dissenting. In this remarkable decision, the Arkansas Supreme Court has affirmed the adoption of a child without the consent of the child’s only natural parent, where that person was known to-the court, was not incompetent, and whose parental rights had not been terminated in a proceeding brought by the State of Arkansas. Strip away all the legalese and what you have is an Arkansas circuit court, over the objection of a child’s only living natural parent, giving that child to a legal strangers. Just as remarkable, this court has affirmed the circuit court’s decision even though it is clear that our adoption statute — the formalities embodied thereih constituting the due-process protections afforded to a natural parent — was hot strictly complied with. The Supreme Court of the United States has said: The interest of parents in the care, cus-' tody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska, 262 U.S. 390 [43 S.Ct. 625, 67 L.Ed. 1042] (1923), we held that the “liberty” protected by the Due Process Clause includes the right of parents to “establish a home and bring up children.” Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). I cannot agree that this court has afforded Mr. Lagios due process when this -court picks and chooses which parts of a comprehensive uniform adoption code must be strictly followed and relegates the rest to “substantial complianeé” only. The majority’s citation to Swaffar v. Swaffar, 309 Ark. 73, 827 S.W.2d 140 (1992), which states that adoption statutes must- be “strictly construed,” is obviously intended only to be ironic. Saying it and doing it are quite different. |22One month before the Goldmans filed their adoption petition, DNA testing proved that Mr. Lagios was MH’s natural father. Even though there was a curiously long delay between when Mr. Lagios was conclusively shown to the natural parent and when the circuit court actually entered the paternity order, had the circuit court strictly complied with our adoptions statutes, it- would have been required to dismiss the Goldmans’ petition. Accordingly, by the time the Goldmans refiled their petition, Mr. Lagios would have been declared “the legal father prior to the time the petition for adoption [was] filed.” Ark. Code Ann. § 9-9-206(a)(2)(E). In short, Mr. Lagios’s consent would have been required for the adoption. So, while the legal strangers were only required to substantially comply with our adoption statutes, Mr. Lagios, the known, natural father, was stripped of his parental rights by holding him to strict compliance. In my view, the circuit court — and the majority-got it backwards. I am mindful that the circuit court also found that Mr. Lagios’s consent was not necessary, pursuant to Arkansas Code Annotated section 9-9-207. As I have noted previously, Mr. Lagios’s parental rights were not and have not been terminated pursuant to an action filed by the Arkansas Department of Human Services. Likewise, section 9-9-207 should not have been applied here because Mr. Lagios did not “abandon” the child.. As soon as he suspected that he might be MH’s father, he began trying to establish paternity. Finally, it is not disputed that Mr. Lagios visited the child frequently and that when the Goldmans secured a guardianship, they kept Mr. Lagios from visiting the child. DsFinally, the majority has ignored key parts of Mr. Lagios’s fourth point on appeal. Mr. Lagios’s argument begins by asserting that the starting point of the court’s analysis should be the sanctity of his rights as a natural parent. He refers to his citation of Martin v. Martin, 316 Ark. 765, 875 S.W.2d 819 (1994), which stands for the proposition, “No matter what the standard is relative to substantial compliance or strict compliance to the statutory provisions of the Arkansas Adoption Code, one thing is absolutely clear that is that the integrity of the relationship between a biological parent and a child is sacred and is to be protected absent a showing that the parent from whom the adoption is being sought is a danger to the child.”' His argument next addresses his ability as a parent who has already raised a family, his work ethic, and his compassion. The majority should have addressed the argument that Mr. Lagios actually made, at least if it had intended to give Mr. Lagios even a modicum of due process. The majority treats its review as if it' was looking only for any evidence to support the circuit court’s decision. Accordingly, the majority has -employed the wrong standard of review; its review appears to be the sufficiency of the evidence, not a de novo review under a clear and convincing evidence standard. See Racine v. Nelson, 2011 Ark. 50, 378 S.W.3d 93. It launches directly into Mr. Lagios’s supposed unfitness: his advanced age-56 years old, that he worked two jobs, that he had a three-year relationship with a woman whom he met online, and that he smoked tobacco. Without examining the record too closely, the majority judged the Goldmans to be better people, “financially, physically, morally, and socially.” Perhaps this is the most disturbing aspect of this opinion. ^Previously, this court has recognized the rights of natural parents, “however poor and humble they might be, if able to support their child in their own style of life, not as a cardinal principle of law and nature; to be deprived of parental privileges, except when urgently necessary to afford the child reasonable protection.” Davis v. Smith, 266 Ark. 112, 583 S.W.2d 37 (1979). Nothing found by the circuit court shows that Mr. Lagios is unable to properly care for his daughter. Undoubtedly, if he was granted custody of his child, Mr. Lagios would be obligated to make some changes in his life, but so would every family faced with the arrival of a new child. It is an unfair and meaningless to compare Mr. Lagios’s situation with the Goldmans, who have already accommodated the addition of a child. Certainly, that does not make Mr. Lagios “unfit.” It is totally disingenuous for the circuit court and for this court to suggest otherwise. The majority has eliminated the parental rights of a natural parent in favor of people who are wealthier and more socially prominent, calling it in the “best interest of the child.” Nearly a century and a half ago, this court condemned this type of decision, stating, “Any system of jurisprudence which would enable the Courts, in their discretion and with a view solely to the child’s best interests, to take from [a natural father] that right and interfere with [his parental] duties, would be intolerably tyranical, as well as Utopian.” Verser v. Ford, 37 Ark. 27 (1881). I caution my colleagues on this court to understand that once we start deciding who should parent our children based on such seemingly objective criteria as wealth or social standing, no family is safe. I dissent.