ARKANSAS DEPARTMENT OF HUMAN SERVICES
*v.* COUCH

CA 91-436                                   832 S.W.2d 265

Court of Appeals of Arkansas
Division II
Opinion delivered May 27, 1992

*David K. Overton*, for appellant.

*Baxter, Wallace, Jensen & McCallister*, by: *Terence C. Jensen*, for appellee.

ELIZABETH W. DANIELSON, Judge. Appellant Arkansas Department of Human Services (DHS) appeals from a probate

court order granting a petition for adoption filed by appellees, Jim and Lana Couch. The court denied the petition of DHS seeking termination of parental rights and appointment of DHS as custodian with power to consent to adoption. Appellant's position was that Jennifer, the child adopted by appellees, and her sister Misty, who has cerebral palsy, should be adopted together as a sibling group. Appellees sought to adopt only Jennifer. After careful review of the record and of the arguments raised by appellant, we affirm the lower court's ruling that it serves the best interests of both children for them to be adopted separately.

Misty was born on May 26, 1988, and removed from her mother's care on February 10, 1989. At that time she was placed with a foster parent, Jean Goff. Misty has cerebral palsy and goes to Easter Seals for therapy four days a week. Jennifer was born on June 30, 1989. She was removed from her mother's care on August 30, 1989, and placed in foster care with Ms. Goff.

On March 8, 1991, appellant filed a petition for termination of parental rights regarding Jennifer and sought custody with the power to consent to adoption. The same had been filed regarding Misty on February 21, 1991. Sometime during this same time frame, appellees became aware of Jennifer and the possibility of adopting her. Appellees tried to arrange the adoption through DHS, but decided to pursue a private adoption when they met with resistance from DHS. They obtained consent for adoption of Jennifer from her biological mother and were allowed by the court to intervene in the termination of parental rights action filed by appellant. After several hearings on the matter, the court granted appellees' petition to adopt Jennifer.

Appellant's first contention is that the trial court's ruling was clearly against the preponderance of the evidence. Appellant argues that the trial court abused its discretion when it allowed Jennifer to be adopted separate and apart from her sister. Although we review probate proceedings de novo on the record, it is well settled that the decision of a probate judge will not be disturbed unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the trial court to judge the credibility of the witnesses. *In Re Adoption of Perkins/Pollnow*, 300 Ark. 390, 779. S.W.2d 531 (1989). In cases involving child custody, a heavier burden is

cast upon the court to utilize to the fullest extent all its powers of perception in evaluating the witnesses, their testimony, and the child's best interests. The appellate court has no such opportunity, and it has often been said that we know of no case in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as when the interests of minor children are involved. *See In Re Adoption of Milam*, 27 Ark. App. 100, 766 S.W.2d 944 (1989).

■ Appellant states in its brief that DHS's operating policy and Arkansas case law indicate that a court should place siblings together for adoption purposes unless sufficient conditions warrant otherwise. In any proceeding involving the welfare of young children, the court is in no way bound by DHS policy; rather, the paramount consideration is the best interests of the children. *See id.*

■ Arkansas case law does recognize the principle that unless exceptional circumstances exist, young children should not be separated from each other by dividing their custody. *See, e.g., Johnston v. Johnston*, 225 Ark. 453, 283 S.W.2d 151 (1955), and *Ketron v. Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1985). Our courts, however, have recognized that the existence of exceptional circumstances does sometimes warrant the separation of siblings. In *Fries v. Phillips*, 189 Ark. 712, 74 S.W.2d 961 (1934), the supreme court affirmed an order that allowed a brother and sister to be adopted separately. While recognizing the "forceful" argument that siblings should not be separated, the court noted that the two children had been separated for some time and did not know each other. 189 Ark. at 716. In *Riddle v. Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989), this court affirmed the chancellor's decision to separate the custody of two half-brothers. In response to appellant's arguments based on the principle set forth in *Ketron*, this court stated that it did not agree that the law of child custody must be applied in such a rigid and mechanical fashion and that the theory advanced by appellant required no consideration of the child's best interests. 28 Ark. App. at 349. A petition for adoption may only be granted upon a finding that the adoption is in the best interest of the individual to be adopted. Ark. Code Ann. § 9-9-214(c) (Supp. 1991).

■ In light of our case law, Ark. Code Ann. § 9-9-214(c),

and our well-settled rule that the primary consideration in cases involving the welfare of a child is the best interest of that child, we conclude that while keeping siblings together is a commendable goal and an important consideration as a general rule, it is but one factor that must be taken into account when determining the best interest of the child.

Jean Goff, the foster parent of Misty and Jennifer, testified that she thought it would be in the best interests of the children to be placed separately. Ms. Goff described the care necessary for Misty, testifying that there is nothing Misty can do by herself; she has to be fed, dressed, and carried around. She said that the two children have to be watched constantly when they are together because of the danger that Jennifer will put something into Misty's mouth and that Misty is easily frightened around other children. Ms. Goff testified that Jennifer is jealous of the time spent with Misty. It is Ms. Goff's opinion that the two girls do not recognize each other as sisters and that there is no bonding between them.

Appellant offered no evidence other than its general policy that it would not be in Jennifer's and Misty's best interests to be placed separately. Although it is DHS's policy to keep siblings together, there was testimony that there are exceptions that would warrant separation. These exceptions include situations where one child would be in danger from the other or where one would be neglected because of the other. The record indicates that no official recommendation had even been made as to whether these two children should be placed separately or together. Although DHS employees testified regarding two potential adoptive families for both girls, neither of these two families had been officially approved, nor were they present for the court to examine.

Appellant's argument that the court was indulging in sheer speculation when it voiced concern that Jennifer was being used as an inducement for Misty's adoption is discredited by the very testimony elicited by appellant. Lillie Owens, a witness for and employee of appellant, replied in the affirmative when asked if she thought Misty would be hard to adopt if she was being adopted by herself. Ms. Owens also stated, "A special needs child is more difficult for placement than a healthy child." Additionally, Ms.

Owens testified that when searching for adoptive families, Misty and Jennifer had been presented only as a sibling group; there was no attempt to place them separately. This evidence supports the court's concern that Jennifer was being used as an inducement to get someone to adopt Misty and that Misty would be better off with someone who was willing to accept her alone in light of her special needs.

Upon review of the record, we are convinced that the court made its decision based upon the best interests of both Misty and Jennifer. We cannot say the court's decision to grant appellee's petition for adoption was clearly against the preponderance of the evidence.

Appellant's second argument is that the trial court abused its discretion in denying appellant's motion for a new trial. Appellant filed its motion for new trial according to Ark. R. Civ. P. 59, averring that it suffered surprise by the court's reasoning that materially affected its substantial rights at trial. Appellant contends that the court based its decision exclusively on the possibility that Jennifer was being used as an inducement for Misty's adoption, and that this was sheer speculation.

Though this was a concern voiced by the court, there was other evidence to support its decision, particularly the testimony of Jean Goff. And as we stated earlier, this concern was not based on mere speculation, but was supported by the very testimony offered by appellant. We agree with appellee that logical inferences drawn from the evidence introduced by appellant can not be used as the basis for an allegation of surprise. The motion for new trial was properly denied.

Appellant's contention that the court erred in considering the recommendation of Jennifer's and Misty's guardian ad litem is without merit. Appellant asserts that Paul Lancaster's representation was inadequate but nothing in the record supports this allegation. Instead, the record demonstrates Mr. Lancaster's participation in and contribution to the proceedings and his concern for the welfare of both children.

Appellant's fourth contention is that the biological mother's consent to adoption was legally insufficient based on her mental incapacity. The record shows that the court was con-

cerned about this issue. The mother, Vivian, was appointed an attorney who spoke with her at length about the consent and the ramifications of adoption. Joe Hardin, Vivian's attorney, stated at trial that based on his discussions with Vivian, his discussions with her counselor, and reports he had read, he felt Vivian was not incapable of understanding what was going on; he felt she was legally capable of giving consent. He said he had spoken with her again the day of the hearing and she restated that she did wish to consent to the adoption. The court also questioned Vivian regarding her understanding of the proceedings and was satisfied that Vivian was legally capable of giving consent for Jennifer to be adopted. We cannot say this finding is clearly against a preponderance of the evidence.

Appellant's final point on appeal is that appellee's petition for adoption was fatally defective in that it failed to include all the information required by Ark. Code Ann. § 9-9-210. In *Taylor v. Collins*, 172 Ark. 541, 289 S.W. 466 (1927), the supreme court upheld the validity of a petition for adoption where there was substantial compliance with the statutory requirements. Appellant relies on *Ozment v. Mann*, 235 Ark. 901, 363 S.W.2d 129 (1962), which held an adoption order fatally defective because it failed to recite essential jurisdictional facts. Here, however, jurisdiction and venue of the case were established by appellant's own petition to terminate parental rights, filed before appellees filed their petition as intervenors. Other statutory information required was introduced by the pleadings and testimony of the parties. We find there was substantial compliance with the statutory requirements and the petition was not fatally defective.

Affirmed.

CRACRAFT, C.J., and ROGERS, J., agree.