SLIP OPINION

Cite as 2015 Ark. App. 329

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-63

| | |
|---|---|
| THOMAS L. LAGIOS<br>APPELLANT | **Opinion Delivered** MAY 20, 2015 |
| V. | APPEAL FROM THE COLUMBIA<br>COUNTY CIRCUIT COURT<br>[NO. PR-2012-106-5] |
| KENNETH MITCHELL GOLDMAN<br>and DEANNE FIELDS GOLDMAN<br>APPELLEES | HONORABLE LARRY W.<br>CHANDLER, JUDGE<br><br>AFFIRMED |

**DAVID M. GLOVER, Judge**

This is the second time this case has been before us.[1]  Thomas Lagios appeals from the September 17, 2013 adoption decree, in which the trial court ruled that Lagios was not a fit and proper person[2] to have custody of his infant daughter, M.L.H., and granted the adoption petition filed by appellees, Deanne and Mitch Goldman.  Lagios raises four points of appeal in challenging the adoption decree: (1) the trial court never acquired jurisdiction of the case because the Goldmans never strictly or substantially complied with the adoption statutes; (2) the trial court abused its discretion when it allowed the adoption without Lagios's consent;

---

[1]We remanded to settle and supplement the record and ordered rebriefing in *Lagios v. Goldman*, 2014 Ark. App. 640.  The issues of concern have now been addressed, and the case is again before us.

[2]Arkansas Code Annotated section 9-9-214(c) (Repl. 2009) references "best interest," not fitness, though the concepts are interchangeably used in this adoption proceeding.

(3) the trial court abused its discretion when it sua sponte reopened the case to allow the Goldmans to present evidence from social worker Deborah Rago regarding the home study conducted by her when it previously was not allowed into evidence because Rago did not appear for the hearing and Lagios was unable to cross-examine her; and (4) the facts do not support the trial court's determination that it was in M.L.H.'s best interest for the Goldmans to be allowed to adopt her. We affirm.

*Facts*

M.L.H. was born on February 14, 2012, to Crystal Angela Morgan, a twenty-nine-year-old single person. At the time of the birth, Crystal was cohabitating with Lonnie Henson, a man in his sixties. He was present for M.L.H.'s birth and signed the birth certificate as the father. Crystal died unexpectedly on March 12, 2012, when M.L.H. was only a month old. Henson attempted to care for M.L.H. on his own, but for various reasons, including the fact that he was in poor health, he asked appellee Deanne Goldman, whom he knew from frequenting her store, for help with the baby. Deanne continued to help Henson with the baby from the end of March 2012 until the end of May 2012, when Henson asked her to adopt M.L.H. because he could not care for M.L.H. However, with discussion by Henson of a possible medical-malpractice lawsuit being filed on M.L.H.'s behalf, Deanne became M.L.H.'s guardian until such a lawsuit was completed, petitioning for and receiving guardianship of M.L.H.'s person and estate on June 1, 2012, in the Probate Division of the Columbia County Circuit Court.

On June 20, 2012, appellant Lagios, a sixty-one-year-old friend of Henson's, filed a

petition to establish paternity/custody in the Domestic Relations Division of the Union County Circuit Court, asserting that he might be M.L.H.'s father. As confirmed by his own testimony, Lagios had also had sexual relations with Crystal during the period of time she conceived M.L.H.

The Goldmans jointly filed a petition for adoption on September 6, 2012. Lagios responded on September 18, 2012, contesting the adoption and requesting that the petition be denied and dismissed.

On January 14, 2013, the Union County Circuit Court entered an order declaring Lagios to be M.L.H.'s biological father. It then transferred the custody portion of the pending Union County case to Columbia County to be joined with the pending adoption case.

The adoption hearing was held on June 28, 2013. At the hearing, the Goldmans attempted to introduce a home study on their home performed by Deborah Rago; Lagios objected to its introduction because Rago was not present to be cross-examined and the home study contained hearsay. Though the trial court did not allow the home study to be introduced into evidence, it did allow the Goldmans to proffer the home study. At the close of the evidence, the trial court requested post-trial briefs from the parties; after receiving the briefs, the trial court, sua sponte, entered an order on August 9, 2013, reopening the record. Lagios opposed this order in a motion to reconsider; Lagios also filed a motion for visitation, asserting that all attempts to visit M.L.H. had been denied by Deanne.

In the subsequent hearing held on August 30, 2013, the trial court denied Lagios's motion to reconsider reopening the record; it stated that while Ms. Rago had indicated she

SLIP OPINION

would be present for the adoption hearing, she was out of town that day, and the issue was so grave and of such importance that it would constitute an injustice not to allow the record to be completed. It also delayed Lagios's visitation request, stating that it would be making a decision shortly regarding the adoption, at which time it would take up the issue of visitation, if necessary. The trial court then heard the testimony of Ms. Rago and accepted into evidence the home study she had performed. The court informed the parties in a letter opinion dated September 4, 2013, that it was its intention to enter a decree granting the Goldmans' request to adopt M.L.H.; a subsequent order was filed on September 17, 2013. Lagios filed a timely notice of appeal on October 15, 2013.

*Compliance with Adoption Statutes & Sua Sponte Reopening of Case*

Lagios argues that the trial court never acquired jurisdiction of this case because the Goldmans never strictly or substantially complied with the adoption statutes. In a separate point on appeal, Lagios also contends that the trial court abused its discretion by sua sponte reopening the adoption hearing after both parties had rested their cases (to allow Deborah Rago's testimony and the introduction of the home study she prepared for the Goldmans). These two arguments are best addressed together.

Adoptions are "special proceedings" because they were unknown to the common law and are governed totally by statute. *In re: Adoption of Baby Boy Martindale*, 327 Ark. 685, 940 S.W.2d 491 (1997). Rule 81(a) of the Arkansas Rules of Civil Procedure provides that those rules shall apply to all civil proceedings "except in those instances where a statute which creates a right, remedy, or proceeding specifically provides a different procedure in which

4

event the procedure so specified shall apply." Jurisdiction of the probate court to order an adoption depends on strict statutory compliance—all jurisdictional requirements must be in the record. *Swaffar v. Swaffar*, 309 Ark. 73, 827 S.W.2d 140 (1992). However, case law has also held that substantial compliance is sufficient. *Martin v. Martin*, 316 Ark. 765, 875 S.W.2d 819 (1994); *Reid v. Frazee*, 72 Ark. App. 474, 41 S.W.3d 397 (2001) (holding that a petition for adoption is valid where there is substantial compliance with the statutory requirements); *Arkansas Dep't of Human Servs. v. Couch*, 38 Ark. App. 165, 832 S.W.2d 265 (1992) (citing *Taylor v. Collins*, 172 Ark. 541, 289 S.W. 466 (1927)).

Before addressing what Lagios contends are deficiencies that deprived the trial court of jurisdiction to enter the adoption, we must first address Lagios's argument that the trial court erred in sua sponte reopening the case. Arkansas Code Annotated section 9-9-214(b) (Repl. 2009) provides, "The court may continue the hearing from time to time to permit further observation, investigation, or consideration of any facts or circumstances affecting the granting of the [adoption] petition." Lagios argues that reopening of a case is simply not authorized by this statute. He is incorrect. In *Reid v. Frazee*, *supra*, our court held that this particular subsection did in fact authorize subsequent hearings ("Appellant's argument ignores Ark. Code Ann. § 9-9-214(b)."). Additionally, in that case, our court further held:

> Even absent statutory authority, the probate judge had inherent authority to hold the subsequent hearing. In *Massengale v. Johnson*, 269 Ark. 269, 599 S.W.2d 743 (1980), the chancellor vacated a judgment and granted a new hearing when it came to the court's attention that it had possibly overlooked certain defenses. The court reasoned:
>
>> It is a well settled principle that courts have control over their judgments during the term at which they are made, and, for sufficient cause, may, either upon

> application or upon their own motion, modify or set them aside. This power is inherent and plenary and exists without reference to any statute. It exists so that courts may review and correct any mistakes, errors or indiscretions which might have been committed. . . .
>
> Appellants argue that the court should not have vacated the judgment and taken additional evidence because appellees should have adequately developed the issues at the first trial . . . While we agree that the chancellor was not required to set the judgment aside and grant a new hearing, that in no way implies that the chancellor should be prohibited from doing so.
> *Id*. at 271–72, 599 S.W.2d at 745.

72 Ark. App. 474, 479, 41 S.W.3d 397, 400. We find no error in the trial court's decision to sua sponte reopen the case for Ms. Rago's testimony (and Lagios's cross-examination of that testimony) and the introduction of the home study she had prepared on behalf of the Goldmans.

Lagios asserts deficiencies in the adoption petition filed by the Goldmans. Arkansas Code Annotated section 9-9-210 (Supp. 2013) sets forth the requirements for a petition for adoption:

> (a) A petition for adoption signed and verified by the petitioner, shall be filed with the clerk of the court, and state:
>
> (1) The date and place of birth of the individual to be adopted, if known;
> (2) The name to be used for the individual to be adopted;
> (3) The date the petitioner:
> (A) Acquired custody of the minor and of placement of the minor and the name of the person placing the minor; and a statement as to how the petitioner acquired custody of the minor; or
> (B) Was selected to adopt the minor by the child placement agency licensed by the Child Welfare Agency Review Board;
> (4) The full name, age, place, and duration of residence of the petitioner;
> (5) The marital status of the petitioner, including the date and place of marriage, if married;
> (6) That the petitioner has facilities and resources, including those available under a subsidy agreement, suitable to provide for the nurture and care of the minor to be adopted and that it is the desire of the petitioner to establish the relationship of parent and child with the individual to be adopted;

(7) A description and estimate of value of any property of the individual to be adopted;

(8) The name of any person whose consent to the adoption is required, but who has not consented, and facts or circumstances which excuse the lack of his normally required consent, to the adoption; and

(9) In cases involving a child born to a mother unmarried at the time of the child's birth, a statement that an inquiry has been made to the Putative Father Registry and either:

(A) No information has been filed in regard to the child born to this mother; or

(B) Information is contained in the registry.

(b) A certified copy of the birth certificate or verification of birth record of the individual to be adopted, if available, and the required consents and relinquishments shall be filed with the clerk.

Lagios states that the Goldmans' petition for adoption does not contain (1) a description of the full name, age, place, and duration of residence of the petitioner; (2) the marital status of the petitioner, including the date and place of the marriage if married; (3) the relationship between Keith Mitchell Goldman and Deanne Fields Goldman; (4) an assertion that the petitioner has facilities and resources suitable to provide for the nurturing care of the minor child to be adopted; (5) a description and estimation of any property of the individual to be adopted; (6) the names of any person whose consent to the adoption is required but who has not consented, nor the facts or circumstances which excuse the lack of his normally required consent to the adoption; or (7) any inquiry into the putative-father registry and whether there has been a registration of a putative father.

However, the petition does state the full names of the petitioners and their address. Ages, duration of residence, marital status, and length of marriage were made part of the record by the testimony of the Goldmans, as was the value of M.L.H.'s property. Evidence

7

SLIP OPINION

of suitable resources and facilities to provide for M.L.H.'s care was provided by Deborah Rago's testimony and the home study. Further, facts were determined at the hearings that established that Lagios's consent was not necessary for M.L.H.'s adoption, *see infra*. With respect to the requirement of inquiry into the putative-father registry, Lagios had been determined through DNA testing to be M.L.H.'s biological father; therefore, it was unnecessary for the Goldmans to inquire into the putative-father registry.

Lagios argues that the Goldmans did not comply with Arkansas Code Annotated section 9-9-211 (Repl. 2009), which contains the requirements for the report of the petitioner's expenditures:

> (a) Except as specified in subsection (b) of this section, the petitioner, in any proceeding for the adoption of a minor, shall file, before the petition is heard, a full accounting report in a manner acceptable to the court of all disbursements of anything of value made or agreed to be made by or on behalf of the petitioner in connection with the adoption. The petitioner shall file a sworn affidavit showing any expenses incurred in connection with:

> (1) The birth of the minor;
> (2) Placement of the minor with petitioner;
> (3) Medical or hospital care received by the mother or by the minor during the mother's prenatal care and confinement;
> (4) Services relating to the adoption or to the placement of the minor for adoption which were received by or on behalf of the petitioner, either natural parent of the minor, or any other person; and
> (5) Fees charged by all attorneys involved in the adoption, including those fees charged by out-of-state attorneys.

> (b) This section does not apply to an adoption by a stepparent whose spouse is a natural or adoptive parent of the child, or to an adoption where the person to be adopted is an adult, or where the petitioner and the minor are related to each other in the second degree.

> (c) The petitioner shall file a signed, sworn affidavit verifying that all expenses as required by this section have been truthfully listed and shall be informed by the

court as to the consequences of knowingly making false material statements.

Although Lagios argues that this statutory provision was not satisfied, the Goldmans filed an affidavit, albeit on July 2, 2013, stating the only expenses they had incurred were $3,000 in attorney's fees, $215 in court costs, and $500 for the home study.

Lagois contends that the Goldmans did not comply with Arkansas Code Annotated section 9-9-212(b)(1)(A) (Supp. 2013), which requires that before placement of a child in the petitioner's home, a home study shall be conducted by a licensed certified social worker. M.L.H. was already in the Goldmans' home due to Deanne Goldman obtaining guardianship of her on June 1, 2012. Furthermore, the home study was admitted into evidence after the trial court reopened the case.

Lagios argues that Arkansas Code Annotated section 9-9-212(f), requires that if one parent of a child is deceased and the parent-child relationship was not eliminated at the time of death, the parents of the deceased parent shall be notified of the adoption proceedings, except under certain circumstances not present in this case. This requirement was satisfied at the June 28, 2013 hearing, when Crystal's sister, Nicole Mullins-Ensminger, testified that their father was deceased and their mother was not present in their lives.

As noted by the concurrence, it is true that the Goldmans did not provide information required by the adoption statutes at the times prescribed in the statutes, but by the time the trial court made its decision, all of the statutory requirements that Lagios complains were lacking had been completed. Required statutory information may be introduced through pleadings and testimony of the parties, thus providing substantial compliance. *Arkansas Dep't*

SLIP OPINION

*of Human Servs. v. Couch, supra. See also Reid v. Frazee, supra.* For these reasons, we find that the Goldmans substantially complied with the statutory adoption framework.

*Adoption Without Lagios's Consent*

Lagios argues that the trial court abused its discretion when it allowed the adoption without his consent. Lagios's consent was not required for the adoption. Arkansas Code Annotated section 9-9-206(a) (Supp. 2013) lists the people who are required to consent to adoption. Specifically, subsection (a)(2)(A)–(G), pertaining to when consent is required from the father, provides:

> (a) Unless consent is not required under § 9-9-207, a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by:
>
> (2) The father of the minor if:
>
> (A) The father was married to the mother at the time the minor was conceived or at any time thereafter;
> (B) The minor is his child by adoption;
> (C) He has physical custody of the minor at the time the petition is filed;
> (D) He has a written order granting him legal custody of the minor at the time the petition for adoption is filed;
> (E) A court has adjudicated him to be the legal father prior to the time the petition for adoption is filed;
> (F) He proves a significant custodial, personal, or financial relationship existed with the minor before the petition for adoption is filed; or
> (G) He has acknowledged paternity under § 9-10-120(a).

Lagios is not in any of the above categories that require consent. He was not married to Crystal at any time; M.L.H. is not his child by adoption; he did not have physical or legal custody of M.L.H. at the time the petition for adoption was filed; and he had not filed an acknowledgment of paternity pursuant to Arkansas Code Annotated section 9-10-120(a). The adoption petition was filed in September 2012; the Union County Circuit Court did not

adjudicate Lagios to be M.L.H.'s legal father until January 2013; and there was no testimony that he had any significant custodial, personal, or financial relationship with M.L.H. before the petition for adoption was filed. Therefore, none of the above categories requiring the father's consent are present in this case. Arkansas Code Annotated section 9-9-207(a)(3) (Repl. 2009) provides that consent to adoption is not required of the father of a minor if the father's consent is not required by section 9-9-206(a)(2). Lagios's consent was not required. His argument must fail.

*Adoption in Best Interest of M.L.H.*

Lagios argues that it was not in the best interest of M.L.H. for the adoption to be granted. We disagree. "Best interest" means more than station in life and material things—it includes moral, spiritual, material and cultural values, matters of convenience, and friends and family relationships. *Bush v. Dietz*, 284 Ark. 191, 680 S.W.2d 704 (1984). We will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *Racine v. Nelson*, 2011 Ark. 50, at 17, 378 S.W.3d 93, 103. Great weight is given to a circuit court's personal observations when the welfare of young children is involved. *Id.*

We agree that some of the trial court's reasons for finding that Lagios was not a fit and proper person to have custody of M.L.H., as part of the best-interest analysis, are not persuasive, i.e., that he worked shift work and also part-time as a security guard; and that other reasons reflect dubious decisions but are not illegal, i.e., that he lived with a woman he

11

met on the Internet and rescued from a compound in Grapevine, Arkansas. However, the trial court made additional findings. It found Lagios had offered no support for M.L.H. after he learned that she was his child (although he did contribute money toward Crystal's funeral expenses). After Crystal's death, knowing that there was a possibility that he was M.L.H.'s father, Lagios left M.L.H. in Henson's care and did not seek proof of paternity until the end of June 2012. The court found the Goldmans were the only people M.L.H. knew as her parents, having spent the vast majority of her life being cared for, nurtured, and loved by them, creating a strong familial bond. It found that the Goldmans were financially, physically, morally, and socially fit to raise M.L.H. We cannot say that the trial court's decision that it was not in M.L.H.'s best interest to remove her from the only home she has ever known and place her, for all intents and purposes, with a person who is a stranger to her, is clearly against the preponderance of the evidence. The trial court's grant of the adoption is affirmed.

Affirmed.

BROWN, J., agrees.

ABRAMSON, J., concurs.

Although I agree with the conclusion that the majority reaches, I write separately to express my concern in affirming this case based on the absence of some of the statutory requirements in the appellees' petition for adoption. Even though appellees' counsel offered a plausible explanation at oral argument for the unique reasons of this lapse, I write to make it clear that this court does not generally condone omissions from the contents requirement for the standard adoption petition as set forth in Arkansas Code Annotated section 9-9-210

(Supp. 2013).

However, because this failure was cured by the proof presented to the trial court—the testimony presented, the domestic-adoption home-study report, and the affidavits by the appellees and the licensed social worker who completed the home study—I am willing to affirm. The statutory requirements for adoption were ultimately presented to the trial court prior to the court reaching its conclusion.

We are able to look at the entire record to find substantial compliance, and here, after taking into account both the testimony and the pleadings, such compliance was established. An adoption is a special proceeding, unlike other actions, and the set of facts in this case is particularly convoluted. But based on a review of the entire record, I conclude that all jurisdictional requirements are found in the record; therefore, there was substantial compliance with the statute. Accordingly, I concur.

*Depper Law Firm, Inc.*, by: *Robert L. Depper, Jr.*, for appellant.

*Burbank Dodson & Barker, PLLC*, by: *Jack W. Barker*, for appellees.