SLIP OPINION

Cite as 2016 Ark. 59

# SUPREME COURT OF ARKANSAS

No. CV–15–491

| | |
|---|---|
| THOMAS L. LAGIOS<br>APPELLANT | **Opinion Delivered** February 18, 2016 |
| V. | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT<br>[NO. PR-2012-106-5] |
| KENNETH MITCHELL GOLDMAN AND DEANNE FIELDS GOLDMAN<br>APPELLEES | HONORABLE LARRY W. CHANDLER, JUDGE |
| | AFFIRMED; COURT OF APPEALS' OPINION VACATED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Thomas L. Lagios appeals from a decree of adoption entered in the Circuit Court of Columbia County, granting the adoption of his biological daughter to appellees Kenneth Mitchell Goldman and Deanne Fields Goldman. On appeal, Lagios contends that (1) the circuit court never acquired jurisdiction of the case due to the Goldmans' failure to comply with relevant adoption statutes, (2) the circuit court abused its discretion in allowing the adoption without his consent, (3) the circuit court abused its discretion in sua sponte reopening the record to allow the Goldmans to introduce further evidence, and (4) the evidence does not support the circuit court's finding that the adoption is in the best interest of the child. We disagree with each of Lagios's assertions and affirm the adoption decree.

Our jurisdiction of this case is pursuant to Arkansas Supreme Court Rule 1-2(e) (2015), as we granted a petition for review filed by Lagios after the Arkansas Court of Appeals

affirmed.  *See Lagios v. Goldman*, 2015 Ark. App. 329, 463 S.W.3d 726.  When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *See, e.g., Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585.

The child at issue in this case, whom we refer to as M., was born in February 2012. When M. was born, the biological mother was twenty-eight years old and unmarried.  She was cohabiting with Lonnie Dan Henson, who was sixty-five years old at the time.  Henson was present for M.'s birth and was listed as the father on her birth certificate.  M.'s biological mother died on March 12, 2012, when M. was approximately one month old.

Henson initially attempted to care for M. himself, but, for various reasons, he was unable to do so.  Prior to M.'s birth, he had become acquainted with appellee Deanne Goldman, who owned an antique mall and flea market that Henson frequented.  According to her testimony, Henson had come to her store shortly before M.'s birth, introduced M.'s mother as his girlfriend, and shared that they were expecting a baby.  Upon the mother's death, Henson contacted Deanne, who became concerned for M. because, as she put it, Henson weighed over three hundred pounds, he was on oxygen and a walker, he had been in the hospital with chest pains, he was sixty-five years old, and he had a newborn baby. Deanne tried to help Henson acquire necessary baby equipment, such as a crib.  She offered to care for M. toward the end of March because Henson was not feeling well.  Henson left M. in Deanne's care starting March 30, 2012.  While this arrangement was originally intended to be temporary, Henson was unable to resume care of the child.  On May 31, 2012, Henson asked Deanne to adopt M.

On June 1, 2012, Deanne filed a guardianship petition in the Probate Division of the Columbia County Circuit Court. It was granted the same day. According to Deanne's testimony, she initially petitioned for guardianship rather than adoption because Henson wanted to pursue a medical-malpractice lawsuit on M.'s behalf. However, Henson later indicated that he wanted Deanne to pursue the lawsuit and that he wanted to "remain [the] beneficiary of her money." Deanne declined to pursue the lawsuit.

On June 20, 2012, appellant Thomas Lagios filed a petition to establish paternity and custody in the Domestic Relations Division of the Union County Circuit Court. Lagios, a sixty-year-old friend of Henson's, asserted that both he and Henson believed that he might actually be M.'s biological father. He also averred that, until recently, he had enjoyed regular visitation with M. Lagios later testified that he met M.'s mother through Henson, who arranged a "[b]lind date," and that he had sexual intercourse with her approximately three times around the time that M. was conceived.[1] He also stated that he had seen M. "[a] bunch of times" at Henson's house. A DNA test performed on August 2, 2012, concluded that Lagios's probability of paternity was 99.992%.

On September 6, 2012, Deanne and her husband jointly filed a petition for adoption in the Probate Division of the Columbia County Circuit Court. Lagios filed a response

---

[1]There was some evidence that M.'s mother had an intellectual disability. Her sister testified that she "was always slow," developed late, had learning disabilities, had health problems, and suffered from post-traumatic-stress disorder after having been sexually abused as a child. It is strongly insinuated that Henson intentionally made her available to Lagios for sex and that both men took advantage of her.

contesting the adoption. On January 14, 2013, the Union County Circuit Court, Domestic Relations Division, entered an order declaring Lagios to be M.'s biological father and transferring the custody portion of the Union County case to Columbia County to be joined with the pending adoption case.

At the adoption hearing, held on June 28, 2013, the Goldmans attempted to introduce a home study performed on their home by Deborah Rago, a licensed, certified social worker. Lagios objected on the basis that Rago was not present to be cross-examined and that the home study contained hearsay.[2] The circuit court allowed the Goldmans to proffer the home study. At the conclusion of the hearing, the court "recessed" for an opportunity to review the parties' arguments regarding the home study and allowed the parties to file posttrial briefs. In his brief, Lagios asserted that the Goldmans had failed to comply with various adoption statutes, including the requirement of a home study. The Goldmans argued that the court could reopen the case in order to hear Rago's testimony and accept the home study into evidence. Additionally, in a letter to the court, the Goldmans specifically requested a hearing for this purpose. On August 9, 2013, the circuit court entered an order reopening the record "for the purpose of receiving additional evidence relevant to the issues involved in this litigation," which the court characterized as "life altering." Lagios opposed this order in a motion to reconsider. At a subsequent hearing on August 30, 2013, the circuit court stated that the issue was "so grave and of such importance" that it would constitute an injustice not

---

[2]Counsel for the Goldmans stated that Rago was not subpoenaed because she indicated that she would be present for the hearing. However, she did not appear.

to allow the record to be completed. The court heard Rago's testimony and accepted the home study into evidence.

The circuit court entered its decree of adoption on September 17, 2013. The court concluded that Lagios was not a fit and proper person to have custody of M. and that the Goldmans were fit and proper persons to raise her. The court further found that the Goldmans had substantially complied with all relevant adoption statutes. Lagios now appeals.

We begin with our standard of review. Before an adoption petition can be granted, the circuit court must find from clear and convincing evidence that the adoption is in the best interest of the child. *See In re Adoption of J.P.*, 2011 Ark. 535, 385 S.W.3d 266. We will not reverse a circuit court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *See id.* Personal observations of the court are entitled to even more weight in cases involving the welfare of a young child. *See id.*

## I. *The Circuit Court's Jurisdiction*

For his first point on appeal, Lagios contends that the circuit court never acquired jurisdiction of this case due to the Goldmans' failure to comply with various adoption statutes. Specifically, he alleges deficiencies with respect to the following statutes.

### A. Arkansas Code Annotated Section 9-9-210

First, Lagios asserts that the Goldmans' petition for adoption failed to comply with Arkansas Code Annotated section 9-9-210 because it failed to state the following:

(4) The full name, age, place, and duration of residence of the petitioner;

(5) The marital status of the petitioner, including the date and place of marriage, if married;

(6) That the petitioner has facilities and resources, including those available under a subsidy agreement, suitable to provide for the nurture and care of the minor to be adopted and that it is the desire of the petitioner to establish the relationship of parent and child with the individual to be adopted;

(7) A description and estimate of value of any property of the individual to be adopted;

(8) The name of any person whose consent to the adoption is required, but who has not consented, and facts or circumstances which excuse the lack of his normally required consent, to the adoption; and

(9) In cases involving a child born to a mother unmarried at the time of the child's birth, a statement that an inquiry has been made to the Putative Father Registry and either:

(A) No information has been filed in regard to the child born to this mother; or

(B) Information is contained in the registry.

Ark. Code Ann. § 9-9-210(a)(4)–(9).

We first note that, for reasons explained later in this opinion, Lagios's consent to the adoption was not required. Additionally, in accordance with Arkansas Code Annotated section 9-9-206, consent to this adoption was not required of any other person. Therefore, the Goldmans did not fail to comply with section 9-9-210(a)(8). Moreover, as the Goldmans point out, the need for an inquiry into the putative-father registry had already been obviated when the petition was filed; DNA testing had already established that Lagios was M.'s

biological father. Accordingly, the Goldmans did not fail to comply with section 9-9-210 (a)(9).

With respect to the other four items, the Goldmans respond that any information missing from their petition was introduced and made part of the record through testimony, subsequent pleadings, and exhibits. As they point out, this court has upheld the validity of an adoption petition where there was substantial compliance with the statutory requirements. *See Taylor v. Collins*, 172 Ark. 541, 289 S.W. 466 (1927). In *Arkansas Department of Human Services v. Couch*, 38 Ark. App. 165, 171, 832 S.W.2d 265, 269 (1992), our court of appeals explicitly rejected the argument that a petition for adoption was fatally defective for failure to include all of the information required by section 9-9-210: "Other statutory information required was introduced by the pleadings and testimony of the parties. We find there was substantial compliance with the statutory requirements and the petition was not fatally defective." The same can be said here.

It is true that this court has held that adoption statutes are to be strictly construed and applied because they are in derogation of the common law. *See, e.g.*, *Swaffar v. Swaffar*, 309 Ark. 73, 827 S.W.2d 140 (1992). However, we have simultaneously held that an adoption decree is void unless all "jurisdictional" requirements "appear in the record." *Id.* at 79, 827 S.W.2d at 144; *see also Minetree v. Minetree*, 181 Ark. 111, 26 S.W.2d 101 (1930). We have limited our strict-compliance standard to those statutory requirements that are jurisdictional in nature—specifically and primarily, those having to do with consent. *See Martin v. Martin*, 316 Ark. 765, 875 S.W.2d 819 (1994); *Swaffar*, 309 Ark. 73, 827 S.W.2d 140; *In re Adoption*

*of Parsons*, 302 Ark. 427, 791 S.W.2d 681 (1990); *In re Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986). In addition, we have held that statutory requirements—even jurisdictional ones—are satisfied when the necessary evidence is made part of the record "before the adoption decree [is] entered." *Martin*, 316 Ark. at 770, 875 S.W.2d at 821. Our court of appeals has explained as follows:

> In *Swaffar v. Swaffar*, 309 Ark. 73, 80, 827 S.W.2d 140, 144 (1992), the Arkansas Supreme Court cited the jurisdictional requirement of consent and that "the consent of the person to be adopted, as required by statute, must not be presumed." The court emphasized that *it was the total lack of evidence of consent in the record, that resulted in the probate court's lack of jurisdiction*. The court in *Swaffar* simply recognized that with no evidence of consent in the record, the court could not substantiate the probate court's jurisdiction over the minor to be adopted. *See id*. at 79–80, 827 S.W.2d at 144; *see also In re Adoption of Lybrand*, 329 Ark. 163, 946 S.W.2d 946 (1997) (finding suggestion that probate court lacked subject-matter jurisdiction for lack of strict compliance with the adoption statutes was not valid where cases addressed jurisdiction of the person).
>
> Similarly, the consent and knowledge of the adoptive parent must not be presumed. In stark contrast to *Swaffar*, however, the record in this case provides ample evidence of knowledge and consent. [The petitioner] appeared before the judge and under oath verified the allegations in the petition. He presented additional testimony about himself, his concern for the child's welfare, and his commitment to providing for the child financially and emotionally. The evidence concerning [the petitioner's] knowledge and participation in the adoption proceeding was before the court, and the probate judge did not abuse his discretion in finding statutory requirements had been satisfied.

*Reid v. Frazee*, 72 Ark. App. 474, 478, 41 S.W.3d 397, 399–400 (2001) (emphasis added).

In short, this court has specifically rejected the suggestion that "any noncompliance with the adoption code, however slight, would prohibit a probate court's entry of an adoption decree." *Martin*, 316 Ark. at 769, 875 S.W.2d at 821. Accordingly, we hold that the failure of the Goldmans' adoption petition to include all of the information required by section 9-9-

8

SLIP OPINION

210(a) did not deprive the circuit court of jurisdiction where all of the information was made

part of the record before the adoption decree was entered.

### B. Arkansas Code Annotated Section 9-9-211

Second, Lagios contends that the Goldmans failed to comply with section 9-9-211,

which provides as follows, in pertinent part:

> (a) Except as specified in subsection (b) of this section, the petitioner, in any proceeding for the adoption of a minor, shall file, before the petition is heard, a full accounting report in a manner acceptable to the court of all disbursements of anything of value made or agreed to be made by or on behalf of the petitioner in connection with the adoption. The petitioner shall file a sworn affidavit showing any expenses incurred in connection with:
>
> (1) The birth of the minor;
>
> (2) Placement of the minor with petitioner;
>
> (3) Medical or hospital care received by the mother or by the minor during the mother's prenatal care and confinement;
>
> (4) Services relating to the adoption or to the placement of the minor for adoption which were received by or on behalf of the petitioner, either natural parent of the minor, or any other person; and
>
> (5) Fees charged by all attorneys involved in the adoption, including those fees charged by out-of-state attorneys.
>
> . . . .
>
> (c) The petitioner shall file a signed, sworn affidavit verifying that all expenses as required by this section have been truthfully listed and shall be informed by the court as to the consequences of knowingly making false material statements.

Ark. Code Ann. § 9-9-211(a) & (c).

Lagios acknowledges that the Goldmans did file an affidavit of expenses as required by section 9-9-211. However, he avers that it was deficient because it was filed on July 2, 2013—in other words, it was not filed "before the petition was heard" on June 28, 2013. For the reasons stated above, we hold that Lagios has failed to establish that section 9-9-211 sets forth a jurisdictional requirement subject to strict compliance. The Goldmans substantially complied with the statute by filing their affidavit of expenses two business days after the first adoption hearing.

### C. Arkansas Code Annotated Section 9-9-212

Third, Lagios argues that the Goldmans failed to comply with certain subsections of section 9-9-212. He points to subsection (b)(1)(A), which requires that a home study be conducted "[b]efore placement of the child in the home of the petitioner" and to subsection (b)(4)(B), which states that "[a] written report of the home study shall be filed with the court before the petition is heard." Ark. Code Ann. § 9-9-212(b)(1)(A) & (b)(4)(B). Here, a home study was conducted in a timely manner. M. was already living with the Goldmans at that point, but there was a guardianship in place; the home study was conducted before the adoption was granted. Furthermore, the written report of the home study was filed with the court at the August 30, 2013 hearing. While Lagios takes issue with the fact that it was not filed at or prior to the June 28, 2013 hearing, we conclude that there was substantial compliance with the statute. The circuit court's decision to hold a subsequent hearing for the purpose of introducing the home study into evidence is addressed later in this opinion.

Lagios also alleges noncompliance with subsection (f), which provides as follows:

> When one (1) parent of a child or children is deceased, and the parent–child relationship has not been eliminated at the time of death, and adoption proceedings are instituted subsequent to such decease, the parents of the deceased parent shall be notified under the procedures prescribed in this subchapter of such adoption proceedings, except when the surviving parent–child relationship has been terminated pursuant to § 9–27–341.

Ark. Code Ann. § 9-9-212(f). The Goldmans submit that the requirement of notifying the biological mother's parents of the adoption proceeding was eliminated by virtue of the testimony of the mother's sister. She stated on the record that their father was deceased and that they "didn't have a mother present" for most of their lives. Lagios maintains that M.'s maternal grandmother should have received notice nonetheless.

This court has not had an occasion to interpret section 9-9-212(f), beyond our holding that it grants to grandparents a right to notice of adoption proceedings but does not grant to them a right to intervene or a right to be heard in adoption proceedings. *See In re Adoption of Tompkins*, 341 Ark. 949, 20 S.W.3d 385 (2000) (interpreting then section 9-9-212(g), which was redesignated section 9-9-212(f) in 2003). However, in the context of the notice requirement for natural parents, we have specifically rejected the argument that a failure to give notice "was fatal to the [t]rial [c]ourt's 'jurisdiction' because of the lack of strict compliance with the adoption statutes requiring such notice." *In re Adoption of Lybrand*, 329 Ark. 163, 167, 946 S.W.2d 946, 948 (1997). In so holding, we suggested that notice requirements have to do with jurisdiction of the person, not subject–matter jurisdiction. *Id*.

11

SLIP OPINION

On this basis, we hold that the failure to strictly comply with section 9-9-212(f) in this case did not deprive the circuit court of jurisdiction.

## II. *Lagios's Consent*

For his second point on appeal, Lagios contends that the circuit court abused its discretion in allowing the adoption of M. to proceed without his consent. As Lagios points out, the circuit court did not address this issue in the decree of adoption. However, the court did find that Lagios had failed to make any efforts to visit the child or to provide any support to the child, which would have eliminated any requirement that he consent pursuant to Arkansas Code Annotated section 9-9-207.

While neither party mentions it, this issue is controlled by statute. Arkansas Code Annotated section 9-9-206(a) lists those who must consent to an adoption of a minor. Subsection (a)(2) provides that the father of the minor must consent in the following circumstances:

> (A) The father was married to the mother at the time the minor was conceived or at any time thereafter;
>
> (B) The minor is his child by adoption;
>
> (C) He has physical custody of the minor at the time the petition is filed;
>
> (D) He has a written order granting him legal custody of the minor at the time the petition for adoption is filed;
>
> (E) A court has adjudicated him to be the legal father prior to the time the petition for adoption is filed;
>
> (F) He proves a significant custodial, personal, or financial relationship existed with the minor before the petition for adoption is filed; or

(G) He has acknowledged paternity under § 9–10–120(a).

Ark. Code Ann. § 9-9-206(a)(2).

Lagios does not fall into any of these categories. He was never married to the mother, M. is not his child by adoption, he did not have physical custody of M. when the adoption petition was filed, there was no written order granting him legal custody of M. when the adoption petition was filed, and he did not acknowledge paternity under Arkansas Code Annotated section 9–10–120(a). While the Union County Circuit Court did adjudicate him to be M.'s legal father, that order was entered on January 14, 2013; therefore, it was not entered prior to the time the adoption petition was filed on September 6, 2012. Additionally, while Lagios referred in his testimony to having visited M. "[a] bunch of times" at Henson's home while she was still in his care, there can be no doubt that he failed to prove that he had a significant custodial, personal, or financial relationship with M. before the adoption petition was filed. Accordingly, Lagios's consent to the adoption was not required. *See* Ark. Code Ann. § 9-9-207(a)(3) (stating that consent to adoption is not required of the father of a minor if the father's consent is not required by § 9-9-206(a)(2)).

### III. *Reopening the Record*

For his next point on appeal, Lagios argues that the circuit court abused its discretion in reopening the record for the purpose of hearing Rago's testimony and receiving the home study into evidence. The parties—and even the circuit court—characterized the court's ruling reopening the record as sua sponte. It is true that neither side filed a motion requesting that the record be reopened; however, both sides addressed the issue in their posttrial briefs, and

13

the Goldmans specifically requested that the record be reopened in a letter to the court.

In any event, this court has made clear that trial courts have considerable discretion in the control and management of proceedings before them. *See, e.g.*, *Midwest Lime Co. v. Independence Cnty. Chancery Ct.*, 261 Ark. 695, 551 S.W.2d 537 (1977). In explaining the scope of that discretion, we have addressed the same situation as that presented in the instant case:

> Even in a jury trial, the reopening of a case for further proof, after both sides have rested, is a matter lying within the sound discretion of the trial court. In a non-jury trial the latitude of the court's discretion to hear further evidence when the court has the case under submission after trial but before any judgment has been entered is quite broad. . . .
>
> It has been said that courts should exercise their discretion as to the admission of evidence pertinent to a material issue in the case for the advancement of the right and to the end that justice may be done conformably to the laws and that refusing to allow testimony under appropriate circumstances is not a proper exercise of judicial discretion. On the other hand, the court's purpose in admitting testimony in order to ascertain the truth of the matter to be determined is an important consideration militating against our finding of an abuse of discretion.

*Id.* at 703–04, 551 S.W.2d at 540–41 (internal citations omitted). Thus, in this case, which was tried to the bench, the circuit court had broad discretion to reopen the case for further proof after both sides had rested, particularly to "ascertain the truth of the matter to be determined" on a material issue. *Id.* at 704, 551 S.W.2d at 541. *See also Tackett v. First Sav. of Ark., F.A.*, 306 Ark. 15, 810 S.W.2d 927 (1991) (stating that a trial court has discretion to reopen the record before entry of a final decree, so long as both parties are afforded the opportunity to be heard on the matter).

It is true that adoption proceedings, unknown to the common law, are governed entirely by statute. *See, e.g.*, *In re Adoption of Martindale*, 327 Ark. 685, 940 S.W.2d 491 (1997). There is an adoption statute addressing this issue: Arkansas Code Annotated section 9-9-214(b) provides that "[t]he court may continue the hearing from time to time to permit further observation, investigation, or consideration of any facts or circumstances affecting the granting of the [adoption] petition." Lagios attempts to draw a distinction between continuing a hearing and reopening a record. This argument is not well taken. At the conclusion of the June 28, 2013 hearing, the circuit court expressed that the hearing would be "recessed" to give the court an opportunity to review the arguments made by the parties, which included whether the home study should be accepted into evidence.

In accordance with *Midwest Lime*, 261 Ark. 695, 551 S.W.2d 537, and section 9-9-214(b), we conclude that the circuit court did not abuse its broad discretion in holding a subsequent hearing so that the Goldmans could introduce the home study into evidence. As the circuit court stated, the issue presented in the case was so grave and of such importance that it would constitute an injustice not to allow the record to be completed.

IV. *Best Interest*

Finally, Lagios argues that the evidence presented in this case does not support the circuit court's finding that the adoption of M. by the Goldmans is in her best interest. As stated above, before an adoption petition can be granted, the circuit court must find from clear and convincing evidence that the adoption is in the best interest of the child. *See, e.g.*, *In re Adoption of J.P.*, 2011 Ark. 535, 385 S.W.3d 266. We will not reverse a circuit court's

SLIP OPINION

decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the circuit court to judge the credibility of the witnesses. *See id.*

Here, the circuit court found that the adoption was in M.'s best interest because Lagios was not a fit and proper person to have custody of her and because the Goldmans were fit and proper persons to raise her. On the issue of Lagios's unfitness, the court noted that he was fifty-six years old—though Lagios actually testified that he was sixty-one years old at the time of the hearing—that he was single; and that he worked shift work at a water utility and part-time as a security guard, in addition to owning and maintaining four rent houses. The court focused on three primary concerns.

First, it noted Lagios's testimony that, approximately three years prior, he had met a woman named Marie Addams online and had brought her to live with him. Lagios and Addams both testified that she had previously been living in a barn "like an animal" and that she was in danger, although they did not identify what the danger was. The court stated in its decree that this situation was "enormously disturbing" and that a child should not be exposed to such risks. The court also noted Lagios's testimony that both he and Addams would be the caregivers of M. if he were granted custody. The court pointed out that Addams had never met M. and that there was no evidence that she had any experience caring for children.

Second, the court noted Deanne Goldman's testimony that M. is allergic to smoke and Lagios's testimony that he smokes a pack of cigarettes per day. The court found that "the

health and safety of [M.] would immediately be compromised if she were required to reside in the residence of Mr. Lagios."

Third, the court pointed out that Lagios had learned in August 2012 that he was M.'s biological father. After that point, he made no efforts to establish a relationship with her or offer support to her.

Conversely, the court found that the Goldmans were financially, physically, morally, and socially fit to raise M. Specifically, the court found that Kenneth Goldman had worked for the same employer for more than thirty years; that Deanne Goldman owned and operated a successful retail business; that the Goldmans were regular, active members of a local church; and that M. had spent the vast majority of her life being cared for, nurtured, and loved by the Goldmans. Importantly, the court found that a strong familial bond existed between M. and the Goldmans.

These findings constitute clear and convincing evidence that the adoption is in M.'s best interest. Certain findings are not persuasive; for example, as Lagios points out, the fact that he works shift work and has an additional part-time job tends to show that he is hardworking, if anything. But his questionable judgment—as reflected in the testimony about his living arrangement with Addams—and his failure to offer any support to M. are critical.

We are convinced that the circuit court's best-interest finding is not against the preponderance of the evidence for two primary reasons. First, the circuit court was in a far superior position to observe the parties and judge the credibility of the witnesses. *See, e.g.*, *In re Adoption of M.K.C.*, 2009 Ark. 114, 313 S.W.3d 513. It is well settled that we give great

17

weight to a trial judge's personal observations when the welfare of young children is involved. *See id.* We have said that this is so because there are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carries a greater weight than those involving the custody of minor children. *See, e.g.*, *McNutt v. Yates*, 2013 Ark. 427, 430 S.W.3d 91.

Second, as the circuit court pointed out, M. has spent almost her entire life in the care of the Goldmans. Henson placed her in their care when she was approximately one month old, and she is now four years old. The evidence clearly showed that the Goldmans are the only people she knows as her parents and that Lagios is a stranger to her. For these reasons, we cannot say that the circuit court's finding that the adoption is in her best interest is against the preponderance of the evidence.

The only argument that Lagios develops on appeal is that the circuit court ignored certain facts about Deanne Goldman. For the most part, Lagios badly misrepresents Deanne's testimony. For example, contrary to Lagios's claim that she lied in court about her address, Deanne explained that an incorrect address was set forth on her guardianship petition due to an oversight. Contrary to Lagios's claim that she lied in court about M.'s receipt of Social Security income, Deanne explained that the income was not listed in the guardianship petition because M. was not receiving it at that time; Henson was receiving it until March 2013. In short, each of Lagios's contentions is either factually inaccurate or irrelevant. Accordingly, we are not convinced by Lagios's arguments on the issue of best interest.

For all of the above-stated reasons, we affirm the circuit court's decree of adoption.

Affirmed; court of appeals' opinion vacated.

Special Justice LONA MCCASTLAIN joins in this opinion.

BAKER, J., concurs.

HART, J., dissents.

WOOD, J., not participating.

**KAREN R. BAKER, Justice, concurring.**  Although I agree with the majority in this case, I write separately to address two separate points.

First, with regard to Lagios's consent, based on the record and Lagios's point on appeal, I agree that the circuit court did not err.  Pursuant to Ark. Code Ann. § 9-9-206, Lagios simply does not fall within any of these categories that would require his consent to the adoption.  However, I must emphasize that Lagios did not assert that this statute infringed upon his fundamental right as a natural parent or challenge the constitutionality of the statute. In his brief, Lagios states,

> One thing is absolutely clear and that is that the integrity of the relationship between a biological parent and a child is sacred . . . . [I]f the statute was open to construction and interpretation, it should be construed in support of the right of the natural parent.

However, Lagios failed to present a constitutional challenge to the statute.  Therefore, based on the record before us, the applicable statute, and our standard of review, we must affirm the circuit court.

Second, I write to address Lagios's argument regarding Ark. Code Ann. § 9-9-212(f) which states:

When one (1) parent of a child or children is deceased, and the parent–child relationship has not been eliminated at the time of death, and adoption proceedings are instituted subsequent to such decease, the parents of the deceased parent shall be notified under the procedures prescribed in this subchapter of such adoption proceedings, except when the surviving parent-child relationship has been terminated pursuant to § 9-27-341.

Lagios contends that the circuit court did not acquire jurisdiction because the Goldmans failed to comply with this subsection. Specifically, Lagios asserts that Morgan's parents were not notified of the adoption proceedings — "no proof of such notification was presented at trial" — and therefore, the circuit court did not acquire jurisdiction to enter the adoption decree. This argument fails for two reasons. First, at the June 28, 2013 hearing, Ensminger testified that Morgan's father had predeceased Morgan, and their mother was not present in their lives since their childhood. Based on her testimony, it is evident that, based on the particular facts in this case, the notice requirement was satisfied because Morgan's father was deceased and her mother was not present and able to be notified. Further, the Goldmans were not required to notify the next of kin, here, Ensminger, but did so as is demonstrated by Ensminger's testimony. Accordingly, notice under this subsection was provided. Second, Lagios appears to have misread this subsection because it does not apply to him. Lagios is not "the parents of the deceased," and notice to him was not required based on this subsection. Simply put, Lagios does not have standing to make this argument and cannot complain that the circuit court did not acquire jurisdiction. *See generally Racine v. Nelson*, 2011 Ark. 50, at 15, 378 S.W.3d 93, 101.

SLIP OPINION

Based on my discussion above, I concur in the majority's opinion and would affirm the circuit court.

**JOSEPHINE LINKER HART, Justice, dissenting.** In this remarkable decision, the Arkansas Supreme Court has affirmed the adoption of a child without the consent of the child's only natural parent, where that person was known to the court, was not incompetent, and whose parental rights had not been terminated in a proceeding brought by the State of Arkansas. Strip away all the legalese and what you have is an Arkansas circuit court, over the objection of a child's only living natural parent, giving that child to a legal strangers.

Just as remarkable, this court has affirmed the circuit court's decision even though it is clear that our adoption statute—the formalities embodied therein constituting the due-process protections afforded to a natural parent—was not strictly complied with. The Supreme Court of the United States has said:

> The interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer v. Nebraska*, 262 U.S. 390 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children."

*Troxel v. Granville*, 530 U.S. 57 (2000). I cannot agree that this court has afforded Mr. Lagios due process when this court picks and chooses which parts of a comprehensive uniform adoption code must be strictly followed and relegates the rest to "substantial compliance" only. The majority's citation to *Swaffar v. Swaffer*, 309 Ark. 73, 827 S.W.2d 140 (1992), which states that adoption statutes must be "strictly construed," is obviously intended only to be ironic. Saying it and doing it are quite different.

21

One month before the Goldmans filed their adoption petition, DNA testing proved that Mr. Lagios was MH's natural father. Even though there was a curiously long delay between when Mr. Lagios was conclusively shown to the natural parent and when the circuit court actually entered the paternity order, had the circuit court strictly complied with our adoptions statutes, it would have been required to dismiss the Goldmans' petition. Accordingly, by the time the Goldmans refiled their petition, Mr. Lagios would have been declared "the legal father prior to the time the petition for adoption [was] filed." Ark. Code Ann. §9-9-206(a)(2)(E). In short, Mr. Lagios's consent would have been required for the adoption. So, while the legal strangers were only required to substantially comply with our adoption statutes, Mr. Lagios, the known, natural father, was stripped of his parental rights by holding him to strict compliance. In my view, the circuit court—and the majority—got it backwards.

I am mindful that the circuit court also found that Mr. Lagios's consent was not necessary, pursuant to Arkansas Code Annotated section 9-9-207. As I have noted previously, Mr. Lagios's parental rights were not and have not been terminated pursuant to an action filed by the Arkansas Department of Human Services. Likewise, section 9-9-207 should not have been applied here because Mr. Lagios did not "abandon" the child. As soon as he suspected that he might be MH's father, he began trying to establish paternity. Finally, it is not disputed that Mr. Lagios visited the child frequently and that when the Goldmans secured a guardianship, they kept Mr. Lagios from visiting the child.

Finally, the majority has ignored key parts of Mr. Lagios's fourth point on appeal. Mr. Lagios's argument begins by asserting that the starting point of the court's analysis should be the sanctity of his rights as a natural parent. He refers to his citation of *Martin v. Martin*, 316 Ark. 765, 875 S.W.2d 822 (1994), which stands for the proposition, "No matter what the standard is relative to substantial compliance or strict compliance to the statutory provisions of the Arkansas Adoption Code, one thing is absolutely clear that is that the integrity of the relationship between a biological parent and a child is sacred and is to be protected absent a showing that the parent from whom the adoption is being sought is a danger to the child." His argument next addresses his ability as a parent who has already raised a family, his work ethic, and his compassion. The majority should have addressed the argument that Mr. Lagios actually made, at least if it had intended to give Mr. Lagios even a modicum of due process.

The majority treats its review as if it was looking only for any evidence to support the circuit court's decision. Accordingly, the majority has employed the wrong standard of review; its review appears to be the sufficiency of the evidence, not a de novo review under a clear and convincing evidence standard. *See Racine v. Nelson*, 2011 Ark. 50, 378 S.W.3d 93. It launches directly into Mr. Lagios's supposed unfitness: his advanced age—56 years old, that he worked two jobs, that he had a three-year relationship with a woman whom he met online, and that he smoked tobacco. Without examining the record too closely, the majority judged the Goldmans to be better people, "financially, physically, morally, and socially." Perhaps this is the most disturbing aspect of this opinion.

Previously, this court has recognized the rights of natural parents, "however poor and humble they might be, if able to support their child in their own style of life, not as a cardinal principle of law and nature, to be deprived of parental privileges, except when urgently necessary to afford the child reasonable protection." *Davis v. Smith*, 266 Ark. 1125, 83 S.W.2d 37 (1979). Nothing found by the circuit court shows that Mr. Lagios is unable to properly care for his daughter. Undoubtedly, if he was granted custody of his child, Mr. Lagios would be obligated to make some changes in his life, but so would every family faced with the arrival of a new child. It is an unfair and meaningless to compare Mr. Lagios's situation with the Goldmans, who have already accommodated the addition of a child. Certainly, that does not make Mr. Lagios "unfit." It is totally disingenuous for the circuit court and for this court to suggest otherwise.

The majority has eliminated the parental rights of a natural parent in favor of people who are wealthier and more socially prominent, calling it in the "best interest of the child." Nearly a century and a half ago, this court condemned this type of decision, stating, "Any system of jurisprudence which would enable the Courts, in their discretion and with a view solely to the child's best interests, to take from [a natural father] that right and interfere with [his parental] duties, would be intolerably tyranical, as well as Utopian." *Verser v. Ford*, 37 Ark. 27 (1881). I caution my colleagues on this court to understand that once we start deciding who should parent our children based on such seemingly objective criteria as wealth or social standing, no family is safe.

I dissent.

*Depper Law Firm, Inc.*, by: *Robert L. Depper, Jr.*, and *Caleb Baumgardner*, for appellant.

*Burbank Dodson & Barker, PLLC*, by: *Jack W. Barker*, for appellees.